**GLENRIDGE DEVELOPMENT COMPANY**

v.

**CITY OF AUGUSTA.**

Supreme Judicial Court of Maine.

Argued March 29, 1995.

Decided Aug. 1, 1995.

Arnold Bloom (orally), Bloom & Witkin, Boston, MA, Lester F. Wilkinson, Jr., Bernstein, Shur, Sawyer & Nelson, Portland, for appellant.

Charles E. Moreshead (orally), Augusta, for appellee.

Before ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

Glenridge Development Company appeals from a judgment entered in the Superior Court (Kennebec County, *Alexander, J.*) affirming the decision of the State Board of Property Tax Review denying its request for an abatement. Glenridge contends that the Board improperly included in a pro forma statement of its income the interest subsidy paid by a government agency directly to its mortgage lender, and failed to take into consideration the regulations and restrictions under which the owner is obligated to operate. Because we conclude that the Board was not compelled to find the assessment to be manifestly unjust, we affirm the judgment.

Glenridge owns the land and buildings that comprise Glenridge Development, a low-income, multi-family apartment complex located in the City of Augusta. The complex was built in 1975 and was completed with federal assistance from the United States Department of Housing and Urban Development (HUD) as permitted by section 236 of the National Housing Act of 1937. *See* 42 U.S.C.A. § 1437 (1994).

Pursuant to its regulatory agreement with HUD, Glenridge is restricted from selling, refinancing, raising or lowering rents, or making improvements or major repairs without HUD's approval. The distribution of profits to the owners is also limited. Glenridge pays a mortgage interest rate of 1% annually; HUD pays Glenridge's mortgage lender the difference between the market interest rate on the mortgage of 8¼% and 1%. The value of this benefit to Glenridge is approximately $162,000 each year.

In 1989, the City ordered revaluations on all Augusta real estate. The revaluations were performed by M.M.C., Inc. (MMC). Using the revaluation figure for the property, Donald Cadwell, the Assessor for the City, assessed the value of the entire property at $3,757,600 for the tax year 1991–1992.

Glenridge filed unsuccessful abatement applications with the assessor's office and with the City's Board of Assessment Review seeking a total abatement of $1,315,160 [1] in the valuation of the property. *See* 36 M.R.S.A. §§ 841, 843 (1990 & Supp.1994). Glenridge appealed to the State Board of Property Tax Review pursuant to 36 M.R.S.A. § 843(1–A) (1990),[2] and sought an additional $1 million abatement over its original request.

At the hearing before the Board, Glenridge contended that the interest rate subsidy paid to its lender should not have been included as part of the income generated by the apartments. Glenridge admits that if the mortgage subsidy is considered income, then valuations obtained using the income approach approximate the value determined by the City. Glenridge also argued that the hardships in operating a section 236 regulated property are factors that should be considered in assessing value. Glenridge presented evidence regarding the HUD-imposed regulations and restrictions that affect the operation of the property.[3] The City framed

1. Glenridge provided the following reason for the requested abatement in valuation:

   Market for Real Estate in that area indicates the property is overvalued [by] about 35%. Also an analysis using the Capitalization of Income Approach indicates that the assessed value would need to be supported by an economic rent far in excess of the actual economic rental value of the property.

2. Section 843(1–A) provides:

   With regard to nonresidential property with an equalized municipal valuation of $500,000 or greater, either party may appeal the decision of the local board of assessment review to the State Board of Property Tax Review within 60 days after notice of the decision from which the appeal is taken or after the application is deemed to be denied. The board shall hold a hearing de novo. If the board thinks that the owner is over-assessed, it shall grant such reasonable abatement as the board thinks proper.

3. Some of the regulations and restrictions pursuant to which the property operates are as follows: The distribution of profits to the owners is limited to 6% of the initial equity investment, and is not always made. The collectible rental amounts on the property are limited. There is a formal process for applying to HUD for a rent increase that takes 90 days, but Glenridge has never received an entire rent increase amount requested from HUD. The complex has experienced turnovers and some steady vacancies. Glenridge's request for an increase in the num-

the issue as whether the assessment on the property was justified.

Sidney Fagelman, the original developer and co-contractor, and current general partner of Glenridge, estimated that the property was worth only $1.2 or $1.3 million, based on the selling prices of section 236 properties at auction around the country. He testified that he is unable to sell, refinance, or obtain a second mortgage on the property.

Lowell Sherwood, the president of a brokerage and appraisal firm, prepared a report pursuant to Glenridge's request regarding the appropriateness of including a mortgage interest subsidy in the income stream when developing a valuation based on income. He testified that in his opinion, the interest rate subsidy is not part of the net operating income used for developing an income approach. Relying completely on the expense and income figures, and the 10% capitalization rate provided by Glenridge, Sherwood arrived at a market value of $1,035,000 to $1,193,000 and a valuation for tax purposes of $1,449,000 to $1,620,000. He did not consider any other method of valuation. He testified that his estimates were not based on the same full scope income method he would have developed if he had done an appraisal on his own, and that he also would have considered the cost and market approaches if doing a formal appraisal.

Cadwell testified that pursuant to its contract with the City, MMC was instructed to evaluate at least 90% of all Augusta properties, using three approaches to determine value: (1) costs of construction, (2) local market considerations during the two previous years, and (3) income and expense statements on commercial properties to develop cap rates for the income approach. MMC assessed the property on a "cost basis;"[4] the other two approaches were used to substantiate this approach. MMC was not specifically

instructed to give any consideration to the fact that Glenridge was a federally-assisted project in its income approach, and the regulatory agreement pursuant to section 236 was not considered.

Cadwell reviewed the value attributed to the property with respect to all three approaches prior to the hearing before the local board. He developed a cost approach by looking at Arch Beta, a similar section 236 project in the City and obtained a value estimate for Glenridge of $4.2 million. Using the market as an indication of value, he compared Glenridge's assessed value with sale prices of conventionally-financed, privately-owned apartment complexes of comparable size and with sale prices of federally-assisted housing. He found that Glenridge's assessed unit value fell within the range of unit sale prices of these other properties. He also considered income as an indication of value. Using this approach, Cadwell obtained a value of $3.7 million.[5]

Norman Gosline, a real estate appraiser and consultant to the City, testified that federal regulations do not prohibit the factoring in of mortgage subsidies when doing an appraisal for tax valuation. While he did not perform a formal appraisal, he also testified that the inability to sell a property without permission from a federal agency would not necessarily affect his opinion of value. Gosline testified that Glenridge could have been sold to an open market participant with the permission of HUD; the purchaser would have been subject to the regulatory agreement.

In its written decision denying the abatement, the Board found that Glenridge "failed to meet its burden of proof" in "showing that the property is substantially overvalued."

---

ber of subsidized units in order to compensate for these vacancies was refused.

**4.** This Court has previously noted that "the cost of reproduction less depreciation" method is recommended by the State Bureau of Taxation as "best suited to the requirements of a mass revaluation program." *Shawmut Inn v. Town of Kennebunkport,* 428 A.2d 384, 390 n. 4 (Me.1981) (citation omitted).

**5.** In reaching this figure, Cadwell followed the methodology used by Glenridge. Because he did not agree with some of the figures used by Glenridge, however, he substituted into its equation figures he thought were more appropriate. Two of these changes were the inclusion of the mortgage subsidy as income and a reduction of the management fees to 6%.

Pursuant to M.R.Civ.P. 80C,[6] Glenridge filed a petition for review with the Superior Court. This appeal followed the affirmance of the decision of the Board by the Superior Court. We review directly the Board's decision for an "abuse of discretion, error of law, or findings unsupported by substantial evidence in the record." *Town of Vienna v. Kokernak,* 612 A.2d 870, 872 (Me.1992).

▮▮▮ A municipality's property valuation is presumed valid, *Camps Newfound/Owatonna, Inc. v. Town of Harrison,* 604 A.2d 908, 909 (Me.1992), and that presumption will not be overcome unless the taxpayer shows "that the assessed valuation in relation to just value is manifestly wrong." *Great N. Nekoosa Corp. v. State Tax Assessor,* 522 A.2d 1316, 1317 (Me.1987). At a hearing before the State Board of Property Tax Review, a taxpayer has the burden of proving that the judgment of the assessors was irrational or so unreasonable in light of the circumstances that the property is substantially overvalued and an injustice results, there was unjust discrimination, or the assessment was fraudulent, dishonest, or illegal. *Central Me. Power Co. v. Town of Moscow,* 649 A.2d 320, 323 (Me.1994). "Because the taxpayer has the burden of proof, we will vacate the [Board's] decision only if the evidence compelled [it] to grant an abatement. . . ." *Camps Newfound,* 604 A.2d at 909.

▮▮▮ Glenridge contends that the City should not have included the interest rate subsidy paid to its lender as part of the income generated by the apartments, and that the regulations and restrictions imposed on it by the HUD agreement were not properly taken into account.

36 M.R.S.A. § 701-A (1990)[7] requires that all relevant factors be considered in determining just value. The provision is consistent with the rule that "all factors relevant to property value should be considered in the assessment process." *Meadowlanes Ltd. Dividend Housing Ass'n v. City of Holland,* 437 Mich. 473, 473 N.W.2d 636, 649 (1991). Accordingly, it was proper for the City in assessing the property to consider the interest subsidy payments from which Glenridge benefits. *Id.,* 473 N.W.2d at 647-50 (mortgage-interest subsidy is a value-influencing factor that should be reflected in valuation process); *see New Walnut Square Ltd. Partnership v. Louisiana Tax Comm'n,* 626 So.2d 430, 432 (La.Ct.App.1993) (no error to include value of subsidized low-interest mortgage in assessment based on income approach); *see also Graff v. Commissioner of Internal Revenue,* 673 F.2d 784, 785 (5th Cir.1982) (interest reduction payments made by HUD on owner's behalf are includable in owner's gross income).

▮▮▮ We agree with Glenridge that the City should have separately considered the effect of the regulations governing the housing complex. That failure, however, did not compel the Board to conclude the City's assessment was manifestly unjust. The City used the cost approach as its primary method and substantiated its result with the income and market methods, all acceptable ways to assess property. *See Shawmut Inn v. Town of Kennebunkport,* 428 A.2d 384, 390 (Me.1981). Impeachment of some aspect of the City's assessment is not sufficient to prove that the assessment is manifestly wrong. *City of Waterville v. Waterville Homes, Inc.,* 655 A.2d 365, 366 (Me.1995). Glenridge, although it did present evidence

---

**6.** A decision of the State Board of Property Tax Review is deemed a final agency action by that board under the Maine Administrative Procedure Act, 5 M.R.S.A. §§ 11001–11008 (1989). 36 M.R.S.A. § 843(2) (Supp.1994).

**7.** Section 701–A provides in part:
  In the assessment of property, assessors in determining just value are to define this term in a manner which recognizes only that value arising from presently possible land use alternatives to which the particular parcel of land being valued may be put. In determining just value, assessors must consider all relevant fac-

tors, including without limitation, the effect upon value of any enforceable restrictions to which the use of the land may be subjected, current use, physical depreciation, functional obsolescence, and economic obsolescence. Restrictions shall include but are not limited to zoning restrictions limiting the use of land, subdivision restrictions and any recorded contractual provisions limiting the use of lands. The just value of land is deemed to arise from and is attributable to legally permissible use or uses only.

**932**

of the limitations and restrictions imposed on the property, did not demonstrate how the failure to discretely consider those factors resulted in a substantial overvaluation.

The owner's testimony of value was based on auction sales of subsidized housing projects, none of which took place in Maine. Such auctions are not the only, or even the primary, method for the sale of these properties. The value placed on Glenridge by Lowell Sherwood was based on the income approach, and was not based on his independent evaluation of the property. Glenridge did not present evidence that the income approach was the best method to be used, or that the values arrived at by the methods used by the City were faulty.

> If the petitioner for abatement fails to provide the Board with evidence of just value that the Board deems credible, the Board has no basis in the petitioner's case for comparing the local assessment and the petitioner's version of just value.

*Id.* at 367.

It was Glenridge's burden to show that the City's assessment substantially overvalued the property and it failed to do so. *Id.* at 366–67. Even though the City's assessment did not separately consider the restrictions under which Glenridge operates, the Board was not compelled to find the assessed value manifestly wrong in relation to the property's just value. *See Camps Newfound,* 604 A.2d at 909–10; *Delta Chems., Inc. v. Town of Searsport,* 438 A.2d 483, 484 (Me.1981).

No other issue raised by Glenridge merits discussion.

The entry is:

Judgment affirmed.

All concurring.