**HYATT CORP., Petitioner,**

v.

**DEPARTMENT OF STATE REVENUE,
Respondent.**

No. 49T10–9601–TA–00001.

Tax Court of Indiana.

June 24, 1998.

Barton T. Sprunger, Mark J. Richards, Ice Miller Donadio & Ryan, Indianapolis, for Petitioner.

Jeffrey A. Modisett, Attorney General, and Marilyn S. Meighen, Deputy Attorney General, Indianapolis, for Respondent.

FISHER, Judge.

Hyatt Corp. (Hyatt) appeals a final determination of the Department of State Revenue (Department) denying its claim for refund for use taxes paid on its food purchases during 1986 through 1988.

## FACTS AND PROCEDURAL HISTORY

Hyatt operates a major hotel chain. In the course of its hotel business, Hyatt purchases unprepared food in order to prepare and serve complimentary meals to members of its Regency Club and its employees. Hyatt paid use tax on the food that it purchased during 1986 through 1988. Subsequently, the Department audited Hyatt and issued a notice of proposed assessment concerning unrelated tax liabilities for the years at issue. *See* IND.CODE ANN. § 6–8.1–5–1(a) (West Supp.1997). Hyatt filed a written protest. *See id.* § 6–8.1–5–1(c). The Department held a hearing on the matter and issued its final determination in a letter of findings dated October 29, 1993.

In its letter of findings, the Department determined that Hyatt had an unpaid tax liability. In the course of the proceedings, Hyatt asserted that it erroneously paid use tax of $12,305.36 on its food purchases and that it was entitled to set off that amount against the assessment. The Department concluded that Hyatt's purchases of food were taxable and therefore denied Hyatt's attempt to set off the use tax it had already paid against the assessment. On March 11, 1994, Hyatt paid the assessment. On April 18, 1994, Hyatt filed a claim for refund for the $12,305.36, plus interest, for the use tax paid on the food purchases. On October 6, 1995, the Department denied Hyatt's refund claim. On January 4, 1996, Hyatt filed this original tax appeal. Both parties have moved for summary judgment.

## ANALYSIS AND OPINION

### Standard of Review

This Court reviews the Department's final determinations de novo and is not bound by

the evidence or the issues raised at the administrative level. *See id.* § 6–8.1–9–1(d); *Indianapolis Fruit Co. v. Department of State Revenue,* 691 N.E.2d 1379, 1382 (Ind. Tax Ct.1998). Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* IND. T.R. 56(C); *Roehl Transp., Inc. v. Department of State Revenue,* 653 N.E.2d 539, 541 (Ind.Tax Ct.1995). Cross motions for summary judgment do not alter this standard. *See Roehl Transp.,* 653 N.E.2d at 541.

## Discussion

■■■ At the outset, the Court notes that there is an issue concerning the timeliness of Hyatt's claim for refund.

(a) If a person has paid more tax than the person determines is legally due, the person may file a claim for refund with the department. In order to obtain the refund, the person must file the claim within three years after the latter of the following:

(1) The due date of the return.

(2) The date of payment

*Id.* § 6–8.1–9–1(a). In this case, Hyatt's claim for refund was filed in 1994, approximately six years after payment of the use tax was presumably made.[1] However, in its answer, the Department admitted that Hyatt filed a timely claim for refund. This constitutes a judicial admission that binds the Department.[2] *See State v. Hladik,* 158 Ind. App. 223, 302 N.E.2d 544, 548–49 (1973); T.R. 8(D). The Court also notes that the running of the limitations period presents no problem with respect to this Court's subject matter jurisdiction because this Court's jurisdiction does not depend on when the claim for refund is filed with the Department, but rather when the appeal is filed in this Court.

*See* IND.CODE ANN. § 6–8.1–9–1(c) (West Supp.1997).

■■■ The Court now turns to the merits of Hyatt's claim. Indiana imposes an excise tax (sales or gross retail tax) on retail transactions in Indiana. *See id.* § 6–2.5–2–1 (West 1989). Indiana also imposes a complementary excise tax (use tax) on tangible personal property stored, used, or consumed in Indiana. *See id.* § 6–2.5–3–2; *see also USAir, Inc. v. Department of State Revenue,* 623 N.E.2d 466, 468–69 (Ind.Tax Ct.1993). A variety of exemptions from these complementary taxes are available.[3] *See* IND.CODE ANN. §§ 6–2.5–5–1 to –38.2 (West 1989 & Supp. 1997). Like any other tax exemptions, these exemptions are strictly construed against the taxpayer, *see Sony Music Entertainment, Inc. v. State Bd. of Tax Comm'rs,* 681 N.E.2d 800, 801 (Ind.Tax Ct.1997), *review denied,* and the taxpayer bears the burden of demonstrating entitlement to the exemption. *See id.* However, "[w]hen construing an exemption, ... the court must always bear the legislature's intent in mind to avoid reading the exemption so narrowly its application is defeated in cases rightly within its ambit." *Harlan Sprague Dawley, Inc. v. Department of State Revenue,* 605 N.E.2d 1222, 1225 (Ind.Tax Ct.1992). In addition, "[w]hen an enactment, including a tax exemption statute, is clear and unambiguous, the plain language governs." *J & J Vending, Inc. v. Department of State Revenue,* 673 N.E.2d 1203, 1206 (Ind.Tax Ct.1996). This means that courts should not employ the policy of strict construction to contradict the plain language of an exemption provision. The Indiana General Assembly is presumed to have meant what it said.

■■■ Hyatt claims that its purchases of food are exempt from use tax under IND. CODE ANN. § 6–2.5–5–20 (West 1989) (amended 1989). The version of section 6–2.5–5–20

---

**1.** The record does not reflect when the use tax payments were made.

**2.** Had the Department raised the limitations issue, the question of whether the limitations period began when Hyatt originally paid the use tax or began when Hyatt paid the assessment that (in its view) should have been reduced would have arisen. In light of the fact that the Department's admission renders the limitations issue moot, the

Court leaves a resolution of this question for another day.

**3.** The gross retail (sales) tax exemptions in chapter 6–2.5–5 of the Indiana Code apply to the use tax imposed by section 6–2.5–3–2. *See* IND.CODE ANN § 6–2.5–3–4(a)(2) (West 1989); *Indianapolis Fruit Co.,* 691 N.E.2d at 1383 n. 1; *Rotation Prods. Corp. v. Department of State Revenue,* 690 N.E.2d 795, 798 n. 5 (Ind.Tax Ct.1998).

applicable to the tax years in issue [4] provided:

(a) Sales of food for human consumption are exempt from the state gross retail tax.

(b) For purposes of this section, the term "food for human consumption" includes:

(1) cereals and cereal products;

(2) milk and milk products, including ice cream;

(3) meat and meat products;

(4) fish and fish products;

(5) eggs and egg products;

(6) vegetables and vegetable products;

(7) fruit and fruit products, including fruit juices;

(8) sugar, sugar substitutes, and sugar products;

(9) coffee and coffee substitutes;

(10) tea, cocoa, and cocoa products;

(11) spices, condiments, extracts, and salt; and

(12) oleomargarine

(c) For purposes of this section, the term "food for human consumption" does not include:

(1) candy, confectionery, and chewing gum;

(2) alcoholic beverages;

(3) cocktail mixes;

(4) soft drinks, sodas, and other similar beverages;

(5) medicines, tonics, vitamins, and other dietary supplements;

(6) water, mineral water, carbonated water and ice;

(7) pet food;

(8) food furnished, prepared, or served for consumption at a location, or on equipment, provided by the retail merchant;

(9) food served by a retail merchant off his premises;

(10) food sold by a retail merchant who ordinarily bags, wraps, or packages the food for immediate consumption on or near the merchant's premises, including food sold on a "take out" or "to go" basis; and

(11) food sold through a vending machine or by a street vendor.

Subsection 6–2.5–5–20(a) exempts purchases of "food for human consumption" from Indiana sales and use tax. Section 6–2.5–5–20(b) defines "food for human consumption." Subsection 6–2.5–5–20(c) excludes certain types of foods and transactions from the "food for human consumption" definition. *See J & J Vending, Inc.,* 673 N.E.2d at 1205. Therefore, if Hyatt's food purchases fall within the statutory definition of "food for human consumption" and are not excluded from that definition, then Hyatt is entitled to the exemption.

The Department does not dispute that the food that Hyatt purchased consisted of meat, eggs, fish, fruit, etc. and products of the same, which are included under the definition of "food for human consumption" in subsection 6–2.5–5–20(b). Therefore, the resolution of this case turns on whether Hyatt's purchases are excluded from the definition of "food for human consumption" by subsection 6–2.5–5–20(c).

■ In its brief, the Department does not argue that any specific provision of subsection 6–2.5–5–20(c) operates to exclude Hyatt's purchases of food from the definition of "food for human consumption." Rather, the Department argues that Hyatt does not fall within the class of persons that the legislature intended section 6–2.5–5–20 to benefit because "Hyatt Corporation is not a member of the poor or working class." According to the Department, because Hyatt is not a member of the poor or working class, allowing Hyatt to receive the exemption will not serve the legislative purpose of mitigating the regressivity of sales tax on food.[5] *See*

---

**4.** The 1989 amendment to section 6–2.5–5–20 made no substantive changes to the exemption provision.

**5.** A regressive tax is "[a] tax levied at rates which increase less rapidly than the increase of the tax[ed] base, thus bearing more heavily on poor-

er taxpayers. Tax for which the rate decreases as the taxed base, such as income, increases." BLACK'S LAW DICTIONARY 1285 (6th ed. 1990). Empirical studies have shown that imposing a sales tax on food purchases is regressive. 2 JEROME R.

*Taxpayers Lobby, Inc. v. Orr*, 262 Ind. 92, 311 N.E.2d 814, 817–18 (1974).

The Department also points out the fact that no sales tax is triggered when Hyatt provides meals to its employees and to its Regency Club members. According to the Department, this fact means that Hyatt's food purchases were taxable. In support of this contention, the Department argues that the purpose of the "Indiana Tax Code" is to tax the last point of sale. In this case, in the Department's view, because Hyatt does not sell the meals it provides, Hyatt's food purchases from its suppliers were last point of sale and, as a result, are taxable. The Department also contends that if Hyatt's food purchases are not taxed, Hyatt will escape taxation entirely. Additionally, in the Department's view, applying the exemption to Hyatt's food purchases will not further the legislative purpose of avoiding tax pyramiding. *See Rotation Prods. Corp. v. Department of State Revenue*, 690 N.E.2d 795, 798 n. 6 (Ind.Tax Ct.1998) (discussing tax pyramiding and legislative efforts to mitigate its effects). Lastly, the Department argues that because Hyatt did not intend to resell the food it purchased, its food purchases are taxable.

As stated above, section 6–2.5–5–20(c) excludes certain items and transactions from the definition of "food for human consumption." Subsections 6–2.5–5–20(c)(1) through (c)(7) exclude certain items from that definition, e.g., pet food, candy, alcoholic beverages, etc. Subsections 6–2.5–5–20(c)(8) through (c)(11) list certain transactions excluded from that definition. The issue in this case is the nature of the transaction between Hyatt and its suppliers, not whether the specific items purchased by Hyatt are excluded by subsections (c)(1) through (c)(7). Therefore, the Court focuses its analysis on the nature of the transaction sought to be taxed and the

subdivisions dealing with excluded transactions.

A reading of subsections (c)(8) through (c)(11) reveals that the legislature intended to exclude transactions involving prepared food from the definition of "food for human consumption." Subsection (c)(8) deals with sales of restaurant meals. Subsection (c)(9) deals with sales of catered meals. Subsection (c)(10) deals with sales of food for immediate human consumption, i.e., sales of ready-to-eat food. *See USAir, Inc. v. Department of State Revenue*, 542 N.E.2d 1033, 1038 (Ind.Tax Ct.1989), *aff'd*, 582 N.E.2d 777 (Ind. 1991). Subsection (c)(11) deals with food sales by vending machine sales and street vendors. The evidence designated to the Court shows that Hyatt purchased *unprepared* food from its suppliers. These transactions, i.e., the transactions sought to be taxed, do not involve prepared food.[6] Therefore, none of the listed transactions in subsections (c)(8) through (c)(11) apply here.

Because none of the exclusions are applicable, Hyatt's food purchases fall squarely under the exemption provision at issue. Therefore, under the plain language of the exemption provision, Hyatt's food purchases are not taxable. The Department's arguments to the contrary do not alter this result.

It is true that Hyatt is engaged in business for profit and is arguably neither poor nor a member of the working class and that section 6–2.5–5–20 was enacted to "lessen the tax burden on the poor." *USAir, Inc.*, 542 N.E.2d at 1038. However, the means that the legislature chose to carry out this purpose was to exempt all purchases of "food necessities and staples." *Taxpayers Lobby*, 311 N.E.2d at 817. Section 6–2.5–5–20 does not condition entitlement to the exemption on the income level or identity of the food purchaser. The rich and the poor alike are eligible for the exemption. Consequently, Hyatt's income level and the fact that it is engaged in business are irrelevant for purposes of its entitlement to the exemption.

HELLERSTEIN & WALTER HELLERSTEIN, STATE TAXATION, ¶ 13.08[1] (1992).

**6.** The fact that Hyatt eventually prepared the food it had purchased is irrelevant. Eligibility for this exemption provision does not turn on what is done with the food after the relevant transaction. This is to be contrasted with other

sales and use tax exemptions. For example, eligibility for the industrial exemptions (IND.CODE ANN. §§ 6–2.5–5–3 to –6 (West 1989 & Supp. 1997)) depends on what is done with the good after the relevant transaction; it must be used in the course of production. *See generally Mechanics Laundry & Supply, Inc. v. Department of State Revenue*, 650 N.E.2d 1223 (Ind.Tax Ct.1995).

The Department's argument is nothing more than an invitation for this Court to add restrictions on the exemption that the legislature itself chose not to include. *See Estate of Hibbs v. Department of State Revenue*, 636 N.E.2d 204, 210 (Ind.Tax Ct.1994) ("Those words are not in the statute and the court will not put them there."). In carrying out its purpose to relieve the tax burden of the poor, the legislature has chosen to exempt all sales of "food for human consumption," rather than restricting the availability of the exemption based on the income level or identity of the purchaser. It was well within the province of the legislature to choose broader means than those necessary to achieve its goal, and it is not for this Court to override that choice by rewriting section 6–2.5–5–20.

■ The Department's argument about the last point of sale is equally unavailing. It is true that in the sales and use tax arena the Indiana General Assembly has striven to tax the last point of sale (i.e., sales to the ultimate consumer) as opposed to intermediate steps in the economic process. However, this does not mean that the legislature is precluded from exempting last points of sale from sales and use tax. By enacting section 6–2.5–5–20, the legislature has done precisely that. All purchases of "food for human consumption" are exempt, notwithstanding the fact that many food purchases are the last points of sale. When the last point of sale is exempted from sales and use tax, the purchaser "escapes" taxation. But that escape is with the legislature's blessing; consequently, it is not for this Court to prevent the escape simply because it deems a taxpayer unworthy of receiving an exemption. The legislature decides which taxpayer deserves to escape taxation and which taxpayer does not. Consequently, Hyatt's entitlement to the exemption cannot be denied on this basis.

■ In addition, the Department's argument that because granting Hyatt the exemption does not further the purpose of avoiding tax pyramiding, Hyatt is not entitled to the exemption is unconvincing. Tax pyramiding occurs in the sales and use tax context where a tax is levied upon a tax. This happens where intermediate transactions in the economic process are subject to sales and use tax. As a result, the sales and use tax on the final transaction in the economic process partially reflects the sales and use tax on the previous transactions. *See Harlan Sprague Dawley, Inc. v. Department of State Revenue*, 605 N.E.2d 1222, 1228 (Ind.Tax Ct.1992).

■ In response to this problem, the legislature has enacted certain sales and use tax exemptions in order to mitigate the effect of tax pyramiding. One example is the enactment of IND.CODE ANN. § 6–2.5–5–8 exempting from sales and use tax goods acquired for resale, rental, or leasing. Had the legislature not enacted this provision, the tax on the final transaction or last point of sale would partially reflect the tax that the seller would have had to pay on the acquisition of the good. Accordingly, the existence or non-existence of tax pyramiding, although not dispositive, is important in this Court's interpretation of a particular exemption provision, *see White River Envtl. Partnership v. Department of State Revenue*, 694 N.E.2d 1248, 1252 (Ind.Tax Ct.1998), but only if mitigating the effect of tax pyramiding animated the enactment of the exemption provision. Where mitigation of the effects of tax pyramiding was not a concern in enacting a particular exemption provision, it is difficult to see how the existence or non-existence of tax pyramiding should have any bearing on this Court's interpretation of that exemption provision.

■ As the Indiana Supreme Court explained, the "food for human consumption" exemption was enacted in order eliminate the regressivity of imposing sales tax on certain kinds of food sales. *Taxpayers Lobby*, 311 N.E.2d at 817; *see also J & J Vending, Inc.*, 673 N.E.2d at 1206–07. The exemption provision was not enacted in order to mitigate the effects of tax pyramiding. This is convincingly demonstrated by examining the transactions section 6–2.5–5–20 exempts. Section 6–2.5–5–20 exempts last points of sale from taxation. A provision dealing with tax pyramiding exempts intermediate transactions from taxation. It is therefore impossible to conclude that the mitigation of the effects of tax pyramiding motivated the en-

actment of section 6–2.5–5–20. Consequently, the non-existence of tax pyramiding in this case has no bearing on this Court's decision.

 Finally, the Department's argument that because Hyatt did not resell the food it purchased, Hyatt's food purchases are taxable is without merit. Apparently, the Department's argument is based on the fact that because Hyatt did not resell the food it purchased, Hyatt's food purchases cannot qualify for an exemption under section 6–2.5–5–8 (exempting, inter alia, goods purchased for resale). *See Greensburg Motel Associates, L.P. v. Department of State Revenue,* 629 N.E.2d 1302, 1305 (Ind.Tax Ct.1994). According to the Department, because Hyatt's food purchases cannot qualify for an exemption under section 6–2.5–5–8, those food purchases cannot qualify for an exemption under section 6–2.5–5–20. This position is contrary to law. The eligibility of Hyatt's food purchases for an exemption under section 6–2.5–5–20 is not predicated on whether those food purchases can qualify for an exemption under section 6–2.5–5–8. *See Lincoln Hills Devel. Corp. v. State Bd. of Tax Comm'rs,* 521 N.E.2d 1360, 1362 (Ind.Tax Ct.1988). Therefore, the fact that the food Hyatt purchased was not resold is irrelevant to the question of whether Hyatt's food purchases qualify for an exemption under section 6–2.5–5–20.

## CONCLUSION

The evidence designated to the Court demonstrates that Hyatt's food purchases are exempt from sales and use tax. Accordingly, this Court GRANTS Hyatt's motion for summary judgment and DENIES the Department's cross motion for summary judgment.