**PEDCOR INVESTMENTS–1990–XIII, L.P., Petitioner,**

v.

**STATE BOARD OF TAX COMMISSIONERS, Respondent.**

Nos. 49T10–9602–TA–00017, 49T10–9609–TA–00103.

Tax Court of Indiana.

Sept. 2, 1999.

---

Marc A. Hetzner, Frank A. Hoffman, Michael J. Messaglia, Krieg Devault Alexander & Capehart, Indianapolis, Indiana, Attorneys for Petitioner.

Jeffrey A. Modisett, Attorney General of Indiana, Angela L. Mansfield, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Respondent.

FISHER, J.

Pedcor Investments–1990–XIII, L.P. (Pedcor) appeals two final determinations of the State Board of Tax Commissioners (State Board) fixing the assessed value of Pedcor's 13–acre, 160–unit apartment complex as of the March 1, 1992 and March 1, 1993 assessment dates.

## FACTS AND PROCEDURAL HISTORY

Federal law provides a number of tax incentives to encourage the production of affordable housing for individuals with lower incomes.[1] Seeking to take advantage of these incentives, Pedcor entered into an agreement with the City of Franklin, Indiana, under which Pedcor would build an apartment complex that would serve low and moderate income tenants in Franklin. The agreement called for a number of land use restrictions and covenants,[2] the most significant of which is that 40%[3] of the rental units

in the apartment complex are to be rented to low and moderate income tenants.

At some point after entering into the agreement, Pedcor began construction of the apartment complex. As of the March 1, 1992 assessment date, the apartment complex was not yet complete and, as a result, none of the rental units were occupied. The township assessor fixed the assessed value of the land and the uncompleted improvements as of the March 1, 1992 assessment date at $586,360. On the March 1, 1993 assessment date, the township assessor fixed the assessed value of the land and the fully completed apartment complex at $1,204,130. Pedcor challenged both of these assessments by filing two Form 130 petitions (one for the March 1, 1992 assessment and one for the March 1, 1993 assessment) with the Johnson County Board of Review (BOR). Unsatisfied with the BOR's disposition of those petitions, Pedcor filed two Form 131 petitions with the State Board challenging the BOR's findings for each assessment year.

In both Form 131 petitions, Pedcor alleged that the apartment complex suffered from obsolescence due to the requirement that 44% of the rental units be leased to lower-income tenants and the effect that requirement had on the marketability of the remaining rental units. In addition, Pedcor alleged that the apartment complex was incorrectly graded and that the land value was excessive when compared to allegedly similarly situated apartment complexes.[4] In the Form 131 petition challenging the March 1, 1992 assessment, Pedcor alleged that, because the apartment complex was vacant on the March 1, 1992 assessment date, the apartment complex suffered obsolescence on that date and a one-time obsolescence adjustment should have been made. The State Board held two separate hearings on these Form 131 petitions. On January 12, 1996, the State Board issued its final determination for the March 1, 1992 assessment date, and on July 26,

---

1. *See* I.R.C. § 42 (West 1988 & Supp.1999).

2. These land use restrictions and covenants will be referred to collectively as deed restrictions.

3. Throughout their presentations to the Court, the parties state that 44% of the rental units were

set aside for lower-income tenants. The Court will therefore use the 44% figure. The change has no effect on the outcome of this case.

4. These contentions are not at issue in this original tax appeal.

1993, the State Board issued its final determination for the March 1, 1993 assessment date. Pedcor then filed an original tax appeal for each State Board final determination. These appeals were consolidated. *See* IND. T.R. 42(A). Both parties have filed summary judgment motions.

## ANALYSIS AND OPINION

### Standard of Review

■ The State Board is afforded great deference when it acts within the scope of its authority. Accordingly, the Court reverses final determinations of the State Board only when those determinations are unsupported by substantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or exceed statutory authority. *See Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1233 (Ind. Tax Ct.1998). Summary judgment is only appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* IND. T.R. 56(C); *Hyatt Corp. v. Department of State Revenue*, 695 N.E.2d 1051, 1053 (Ind. Tax Ct.1998), *review denied.* Cross-motions for summary judgment do not alter this standard. *See Hyatt Corp.*, 695 N.E.2d at 1053.

### Discussion

The True Tax Value of a commercial improvement is its reproduction cost (as calculated under the State Board's regulations) minus physical depreciation and obsolescence depreciation. *See* IND. ADMIN. CODE tit. 50, r. 2.1–5–1 (1992) (codified in present form at *id.* r. 2.2–10–7(f) (1996)); *Loveless Constr. Co. v. State Bd. of Tax Comm'rs*, 695 N.E.2d 1045, 1047 (Ind. Tax Ct.1998), *review denied; Western Select Properties, L.P. v. State Bd. of Tax Comm'rs*, 639 N.E.2d 1068, 1070 (Ind. Tax Ct.1994). Under the regulations, obsolescence depreciation represents a "functional and economic loss of value." IND. ADMIN. CODE tit. 50, r. 2.1–5–1; *see also Loveless Constr. Co.*, 695 N.E.2d at 1047. The functional component of obsolescence depreciation is "caused by

factors internal to the property and is 'evidenced by conditions within the property.'" *Clark*, 694 N.E.2d at 1238 (quoting IND. ADMIN. CODE tit. 50, r. 2.1–5–1); *see also Western Select Properties*, 639 N.E.2d at 1070–71 ("Functional obsolescence is a form of depreciation resulting in loss of value due to lack of utility or desirability inherent in the design of the property.") (quoting INSTITUTE OF PROPERTY TAXATION, PROPERTY TAXATION 114 (Jerrold F. Janata ed. 2d ed.1993)); Michael D. Larson, *Identifying, Measuring, and Treating Functional Obsolescence in an Appraisal*, J. PROP. TAX MGMT., Spring 1999, at 44. There are numerous possible causes of functional obsolescence, e.g., inefficient floor plans, unnecessary or superadequate construction, inadequate parking, and mechanical inadequacy. *See* IND. ADMIN. CODE tit. 50, r. 2.1–5–1; *id.* r. 2.1–6–1 (1992) (codified in present form at *id.* r. 2.2–1–40 (1996)). The economic component of obsolescence depreciation is caused by factors external to the property. *See id.* r. 2.1–5–1. Possible causes of economic obsolescence include: "Inoperative or inadequate zoning ordinances or deed restrictions" and "Market acceptability of the product or devices for which the property was constructed or is currently used." *Id.*

■ Pedcor contends that for both the 1992 and 1993 assessments, the apartment complex should have received an obsolescence adjustment. For both assessments, Pedcor contends that the State Board failed to consider evidence that the deed restrictions on the property and the decreased market acceptability of the apartment community as a whole were causes of economic obsolescence. For the 1992 assessment, Pedcor contends that the State Board should have applied a one-time obsolescence adjustment due to the vacant state of the property on the assessment date.[5] For ease of analysis, the Court will first address the deed restrictions and the alleged decreased market acceptability for the 1992 and 1993 assessments. The Court will then address whether the apartment complex should have received a one-time obsolescence adjustment.

---

5. Property is to be assessed on the basis of its condition on the assessment date. *See Governours Square Apartments v. State Bd. of Tax*

*Comm'rs*, 528 N.E.2d 864, 866 (Ind. Tax Ct.1988) (citing *Stark v. Kreyling*, 207 Ind. 128, 132, 188 N.E. 680, 681 (1934)).

### The Deed Restrictions and Market Acceptability

In Pedcor's view, the deed restrictions cause the apartment complex economic obsolescence because 44% of the rental units are to be rented at 13% to 20% less than the market rate. According to Pedcor, this loss of income translates into a 7.5% obsolescence figure.[6] Pedcor further contends that the market acceptability of the apartment community as a whole has decreased, thereby causing the apartment complex to experience additional economic obsolescence. In support of this contention, Pedcor argues that the fact that 44% of the rental units are set aside for lower-income tenants makes the other 56% of the rental units less desirable. Pedcor maintains that an additional 5% obsolescence adjustment is warranted for this reason.[7] In its final determinations, the State Board did not accept Pedcor's contention that an obsolescence adjustment was warranted due to the deed restrictions. In the final determination for the 1992 assessment, the State Board concluded that the deed restrictions "d[id] not fall within the definition of obsolescence" because they did not constitute "an external influence which affects the usage and operation of the property." (State Bd.1992 Final Determination ¶ 3). The final determination for the 1993 assessment contains a somewhat different analysis: "The evidence along with a review of the area found a lack of market acceptability is not demonstrated. The restrictions as detailed in the evidence are not sufficient justification to support a significant reduction in value." (State Bd.1993 Final Determina-

tion ¶ 3). In its representations to the Court, the State Board elaborates on these findings and has altered its stance to a certain degree. While maintaining its position that the deed restrictions cannot constitute economic obsolescence because they are not external to the property, the State Board also points to the fact that Pedcor receives a number of federal tax incentives as a result of the deed restrictions and argues that these tax incentives make up for any loss in rental income resulting from the deed restrictions. Additionally, the State Board notes that Pedcor voluntarily placed the deed restrictions on the property and that Pedcor voluntarily chose to attract low-income tenants and, therefore, in the State Board's view, cannot complain about the decreased market acceptability of its apartment complex.[8] In essence, the State Board challenges Pedcor's claims of economic obsolescence on three grounds: 1) the deed restrictions cannot constitute economic obsolescence under the definition of economic obsolescence; 2) by entering into the deed restrictions, Pedcor caused any economic obsolescence suffered by the apartment complex, thereby making an obsolescence adjustment unwarranted; and 3) any loss of rental income is made up by the federal tax incentives.

■ The State Board's first and second challenges to Pedcor's obsolescence claims lack merit. Under the regulation governing obsolescence, economic obsolescence can be caused by deed restrictions. *See* IND. ADMIN. CODE tit. 50, r. 2.1–5–1. As a result, the State Board cannot credibly argue that the defini-

---

**6.** To arrive at the 7.5% figure, Pedcor multiplied 17% (the rounded up midpoint between 13% and 20%) by 44% (the number of units required to be rented at the lower rate).

**7.** Pedcor did not support this figure with any calculation.

**8.** The failure of the State Board to articulate these additional reasons for the decision to deny an obsolescence adjustment in its written findings is problematic. *See Word of His Grace Fellowship, Inc. v. State Bd. of Tax Comm'rs,* 711 N.E.2d 875, 878–79 (Ind. Tax Ct.1999) ("It is well-settled that the State Board may not support a final determination by referring to reasons that were not previously ruled upon, but that are offered as post hoc rationalizations.") (citing *20th Century Fiberglass v. State Bd. of Tax*

*Comm'rs,* 683 N.E.2d 1376, 1377 (Ind. Tax Ct.1997); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 50, 103 S.Ct. 2856, 2870, 77 L.Ed.2d 443 (1983)); *see also Perez v. United States Steel Corp.,* 426 N.E.2d 29, 32–33 (Ind.1981) (administrative agencies must inform parties of bases for agency decisions); *Harborlite Corp. v. ICC,* 613 F.2d 1088, 1092–93 (D.C.Cir.1979) (discussing need for administrative agencies to adopt detailed written findings). However, Pedcor does not complain about the post hoc nature of the State Board's newfound rationales for its final determinations. As a result, the Court will treat them as if they were part of the State Board's final determinations. *See Loveless Constr. Co.,* 695 N.E.2d at 1050 n. 8.

tion of economic obsolescence on its face excludes the deed restrictions setting aside 44% of the rental units in the apartment complex for low-income tenants.

Perhaps the State Board's apparent confusion on this point results from language in the regulation stating that economic obsolescence is caused by factors external to the property. A deed restriction is, of course, part of the property itself; so how, one might ask, can it be that a deed restriction can be an external factor causing economic obsolescence? The answer is that the external factor is not the deed restrictions per se, but rather the marketplace's reactions to them. As times change, a deed restriction that at one time enhanced the value of a particular property may make that property less valuable as a result of changing *external* conditions. As the State Board recognizes in its regulations, this is a cause of economic obsolescence.

▄▄▄ The State Board's second challenge has some surface appeal. Although a property owner can reduce a property's value by imprudently agreeing to deed restrictions and cause himself economic loss, a property owner should not be allowed to reduce the tax base in such a manner. *Cf. Lake County Trust No. 1163 v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1253, 1258–59 (where property owner entered into unfavorable lease, obsolescence adjustment was not warranted because there was nothing "inherently wrong with the property itself"), *review denied.* Consequently, the State Board may properly determine that an obsolescence adjustment is not warranted in situations where a property owner imprudently agrees to a deed restriction on his property. However, the State Board goes further. In the State Board's view, any time a property owner enters into a deed restriction, no obsolescence would be warranted because the decision to enter into the deed restriction was within the property owner's control. This simply goes too far.

A deed restriction that causes property to lose value as economic conditions change does not have a different effect on the value of that property merely because it was the property owner that entered into the deed restriction in the first place. Therefore, the State Board cannot point to the mere fact that Pedcor entered into the deed restriction to support a denial of economic obsolescence.

▄▄▄ The State Board's third challenge to Pedcor's obsolescence claims meets with more success. The apartment complex is an income-producing property. As a result, from an economic standpoint, its value is tied to its ability to produce income. *See Simmons v. State Bd. of Tax Comm'rs,* 642 N.E.2d 559, 560 (Ind. Tax Ct.1994) (quoting Appraisal Institute, The Appraisal of Real Estate 409 (10th ed.1992)). The deed restrictions, because they lower the rent of 44% of the rental units, affect the income-producing ability of the apartment complex and thus its value. As a result, if one considers the deed restrictions' effect on the rental income generated by the apartment complex in isolation, one might well conclude that the deed restrictions cause the apartment complex to suffer economic obsolescence.[9] *See Loveless Constr. Co.,* 695 N.E.2d at 1050 (obsolescence linked to decrease in a property's income generating ability); *Clark,* 694 N.E.2d at 1238–39 (loss of rental income possibly indicative of economic obsolescence).

That is where Pedcor would like the Court to end its analysis. However, as the State Board points out, the deed restrictions also allow Pedcor to take advantage of certain federal tax incentives. These tax incentives provide financial benefits to Pedcor's partners, thereby counteracting the decreased rental income. Accordingly, these federal tax incentives must be taken into consideration when evaluating whether the deed restrictions do, in fact, cause the apartment complex to experience economic obsolescence.[10]

9. Although a property tax assessment is not based on a property's market value, *see* Ind. Code Ann. § 6–1.1–31–6(c) (West 1989), market information, such as the property's income-producing ability, is a relevant consideration in determining economic obsolescence because the regulation

governing economic obsolescence incorporates market concepts. *See Canal Square L.P. v. State Bd. of Tax Comm'rs,* 694 N.E.2d 801, 806 n. 8 (Ind. Tax Ct.1998).

10. The Court notes that other jurisdictions considering this issue have reached the same conclu-

Pedcor's arguments to the contrary do not alter this conclusion. In Pedcor's view, the Court may not consider the effect of the federal tax incentives because these benefits ultimately go to Pedcor's partners, not Pedcor itself.[11] This argument is wholly unmeritorious. The deed restrictions create financial benefits, and these benefits cannot be ignored simply because they pass through to the partners (who, incidentally, are jointly and severally liable with Pedcor for any unpaid property tax, see IND. CODE ANN. § 6-1.1-2-5 (West 1989)).

Pedcor also contends that it is improper to consider the federal tax benefits in determining the economic obsolescence of the apartment complex because they are subject to recapture if the apartment complex no longer serves lower-income tenants. Therefore, according to Pedcor, any benefits from the federal tax incentives are speculative, and, therefore, are not probative of whether the apartment complex suffers economic obsolescence. This argument, too, is without merit.

Pedcor built the apartment complex to serve lower-income tenants and entered into the deed restrictions to take advantage of federal tax incentives designed to encourage private developers to build affordable housing for low to moderate income individuals. Apparently, Pedcor did not consider the benefits arising from the deed restrictions speculative when Pedcor decided to build the apartment complex because Pedcor actively sought out these benefits. Pedcor therefore can hardly be heard to argue that these benefits are speculative simply because they are subject to recapture if Pedcor fails to comply with applicable federal regulations. Moreover, Pedcor's argument that these benefits are speculative is based on Pedcor's own speculation that, at some point in the future,

Pedcor will fail to comply with applicable regulations and thereby subject the federal tax benefits to recapture. As of the tax years at issue, Pedcor (or Pedcor's partners) had these federal tax benefits firmly in hand. These benefits will not be ignored simply because Pedcor may release its grip on them in the future.[12]

█ Deciding that the federal tax benefits were a relevant consideration in determining the economic obsolescence of the apartment complex is not the end of the inquiry. The Court must also examine the propriety of the State Board's conclusion that the apartment complex did not suffer economic obsolescence during the tax years at issue. In arriving at its conclusion that the apartment complex did not suffer economic obsolescence, the State Board must have determined that the federal tax incentives made up for any loss in rental income caused by the deed restrictions, including losses due to the alleged decreased market acceptability and that, as a result, the deed restrictions did not actually cause the apartment complex to lose value. Without a loss of value, there can be no economic obsolescence. See Clark, 694 N.E.2d at 1238.

This was a rational conclusion from the evidence contained in the record. At the administrative hearings, Pedcor presented the State Board with evidence showing that the deed restrictions lowered the rental income that Pedcor would otherwise receive but also provided Pedcor with federal tax incentives that Pedcor would not have received but for the deed restrictions. In addition, although, as noted above, the mere fact that Pedcor voluntarily sought out the deed restrictions is not dispositive of the issue of

sion. See, e.g., Kankakee County v. Property Tax Appeal Bd., 131 Ill.2d 1, 136 Ill.Dec. 76, 544 N.E.2d 762, 769 (1989); Glenridge Dev. Co. v. City of Augusta, 662 A.2d 928, 931 (Me.1995); Meadowlanes Ltd. Dividend Housing Ass'n v. City of Holland, 437 Mich. 473, 473 N.W.2d 636, 649 (1991); see also Alta Pac. Assocs. Ltd. v. State Tax Comm'n, 931 P.2d 103, 119 (Utah 1997) (McIff, J., concurring).

11. Because Pedcor is a partnership, any benefits received by Pedcor simply pass through to Pedcor's partners under federal and Indiana tax law.

See I.R.C. §§ 701–704 (West 1988 & Supp.1999); Longmire v. Department of State Revenue, 638 N.E.2d 894, 896 (Ind. Tax Ct.1994).

12. If the deed restrictions become inoperative in the future and Pedcor loses the tax benefits associated with the deed restrictions, this loss would likely be counteracted by Pedcor's ability to lease the rental units at market rates. Therefore, if that were to occur, Pedcor would have to show more than the mere loss of the tax incentives to demonstrate economic obsolescence.

economic obsolescence, it is likely that Pedcor would not have entered into the deed restrictions if the federal tax benefits did not adequately compensate Pedcor for the decreased rental income.

In order to overturn the State Board's conclusion that the federal tax incentives received by Pedcor made up for the loss in rental income in this original tax appeal, there must be unrebutted evidence in the record demonstrating that the federal tax incentives do not make up for the decreased rental income associated with the deed restrictions.[13] *See id.* at 1238–39 (where State Board rebuts taxpayer's prima facie showing of obsolescence, burden of going forward with evidence placed on the taxpayer). However, there is no such evidence in the record. As a result, the State Board's conclusion that the deed restrictions did not cause the apartment complex economic obsolescence must stand. *See id.* at 1239 (where taxpayer fails to carry burden of going forward with evidence, State Board's final determination will not be disturbed).

### The Vacancy of the Apartment Complex During Construction

Pedcor contends that the apartment complex should receive a one-time economic obsolescence adjustment because the apartment complex was vacant on the March 1, 1992 assessment date. In its final determination for the 1992 assessment, the State Board failed to address this issue specifically. Ordinarily, this would require reversal, so that the State Board could address this issue in the first instance. However, where the issue presents only a question of law, the Court may decide the issue in the absence of a State Board determination of the issue. *See Barth, Inc. v. State Bd. of Tax Comm'rs,* 699 N.E.2d 800, 805 (Ind. Tax Ct.1998) (where State Board does not determine issue,

Tax Court may only decide that issue if it can be resolved as a matter of law), *reh'g denied,* 705 N.E.2d 1084 (1998). The issue Pedcor raises may be determined as a matter of law.

Pedcor's basic line of reasoning in support for its contention that the apartment complex should have received a one-time obsolescence adjustment is that it was not generating income due to its vacant state. In Pedcor's view, this fact should have been taken into consideration in arriving at the assessed value of the apartment complex, and, according to Pedcor, required that the apartment complex receive an obsolescence adjustment under the regulations. As further support for its position, Pedcor invites the Court's attention to its decision in *Western Select Properties.* In that case, the taxpayer complained that the State Board erred in finding that a defunct and totally vacant property should receive a 75% obsolescence adjustment. The Court agreed with the taxpayer and held that the State Board's quantification of the obsolescence experienced by the defunct and totally vacant building at 75% was unsupported by substantial evidence. *See Western Select Properties,* 639 N.E.2d at 1073–74. From this holding, Pedcor deduces a rule that wherever there is total vacancy, there is obsolescence. Therefore, under Pedcor's interpretation of *Western Select Properties,* the State Board erred when it did not apply a one-time obsolescence factor to account for the vacancy of the apartment complex on the assessment date.

Pedcor misreads the regulations and this Court's holding in *Western Select Properties.* Under the regulations, obsolescence depreciation "is composed of functional and economic loss of value." IND. ADMIN. CODE tit. 50, r. 2.1–5–1. Accordingly, in order for an obsolescence adjustment to be made, there must be some loss in value. There is no such loss of

---

13. At oral argument, counsel for Pedcor stated, "There is no evidence that the State Board has ever sought or obtained any specific evidence as to the amounts or limitations of these tax benefits which may or may not exist." (Oral Arg. Tr. at 7). This statement demonstrates a misapprehension of the State Board's duties when the State Board reviews a property tax assessment. The State Board does not have the duty to make the taxpayer's case. *See North Park Cinemas, Inc. v.*

*State Bd. of Tax Comm'rs,* 689 N.E.2d 765, 769 (Ind. Tax Ct.1997). Consequently, the State Board was not required to uncover evidence to determine exactly the extent of the federal tax benefits received by Pedcor. Instead, if the federal tax benefits did not make up for the reduced rental income caused by the deed restrictions, Pedcor was required to offer evidence on this point. Pedcor did not do so.

value here. Pedcor points to the lack of income generating ability of the apartment complex on the assessment date. However, when the construction of the apartment complex began, there was no rental income. As a result, from the date of the beginning of construction until the assessment date, the apartment complex did not suffer a loss of income generating ability. Rather, its income generating ability remained static. Therefore, the vacancy of the apartment complex was not evidence of the apartment complex suffering a loss of value.

Pedcor's position finds no support in *Western Select Properties* either. *Western Select Properties* did not deal with a building under construction; it dealt with, inter alia, a building that *had become* defunct and totally vacant and is, therefore, readily distinguishable on its facts from the case at bar. It is unremarkable for the State Board and the Court to find that a building that was once occupied but had become vacant suffered obsolescence because the vacancy in that case was powerful evidence that changing times had caused the building to lose value.[14] However, this unremarkable finding with respect to a building whose useful life has passed cannot be applied to a building that is under construction and whose useful life has not yet begun. Consequently, Pedcor's attempt to deduce a rule from *Western Select Properties* that would govern this case must fail.

Furthermore, adopting Pedcor's interpretation of the regulations to allow for an obsolescence adjustment merely because a building is vacant while it is under construction would lead to palpably absurd results. *See 3551 Lafayette Road Corp. v. Department of State Revenue*, 644 N.E.2d 199, 201 (Ind. Tax Ct.1994) (court will not construe statute to require absurd results); *Garcia v. State Bd. of Tax Comm'rs*, 694 N.E.2d 794, 799 (Ind. Tax Ct.1998) (regulations subject to same rules of construction as statutes). Although it is possible to dream up factual situations where buildings could become obsolete before they are built, under Pedcor's view, a large majority of buildings under construction would be obsolete before they are built, and this obsolescence would then magically disappear once they are finished. If the State Board had intended this result when it adopted its regulations, it would have said so in much clearer terms.

### CONCLUSION

For the reasons stated above, the Court GRANTS the State Board's motion for summary judgment, DENIES Pedcor's motion for summary judgment, and AFFIRMS the final determinations of the State Board.

---

**14.** In *Western Select Properties,* there was no question that the defunct and totally vacant building suffered obsolescence. The only question with respect to the totally vacant and defunct building was how much obsolescence that building suffered. In this case, the existence of obsolescence is an issue.