Richard C. MYNSBERGE d/b/a
RCM Rentals, Petitioner,

v.

DEPARTMENT OF STATE
REVENUE, Respondent.

No. 71T10–9608–TA–00097.

Tax Court of Indiana.

Sept. 9, 1999.

Robert W. Mysliwiec, Jones Obenchain Ford Pankow Lewis & Woods, South Bend, Indiana, Attorney for Petitioner.

Jeffrey A. Modisett, Attorney General of Indiana, Ted J. Holaday, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Respondent.

FISHER, J.

Richard C. Mynsberge d/b/a RCM Rentals (Mynsberge) appeals a final determination of the Department of State Revenue denying his claim for refund of gross retail taxes paid from the 1991 through 1994 tax years.

## FACTS AND PROCEDURAL HISTORY

The facts are undisputed. Mynsberge leases buildings and equipment to Coppes

Nappanee (Coppes), a manufacturer of kitchen cabinets, as part of his leasing business. Under the lease agreement between Mynsberge and Coppes, Coppes makes a monthly lease payment. Coppes also makes a monthly $7800 payment to Mynsberge for electricity, which is predominantly used by Coppes in its manufacturing business. Mynsberge is billed by NIPSCO for the electricity used by Coppes. If the bill for Coppes' electrical usage is less than $7800, Mynsberge refunds 75% of the difference between the $7800 payment and the electric bill.[1] Mynsberge paid a total of $11,492.11 in gross retail (sales) tax on its purchases of electricity from NIPSCO during the tax years at issue.[2]

Mynsberge filed a refund claim with the Department for the sales taxes it paid on these purchases.[3] On May 29, 1996, the Department issued its final determination denying Mynsberge's refund claim. Mynsberge then commenced this original tax appeal. Both parties have moved for summary judgment.

## ANALYSIS AND OPINION

### Standard of Review

■ The Court reviews final determinations of the Department de novo and is bound by neither the evidence nor the issues presented at the administrative level. *See* IND.CODE ANN. § 6–8.1–9–1(d) (West Supp.1999); *Indianapolis Fruit Co. v. Department of State Revenue,* 691 N.E.2d 1379, 1382 (Ind.Tax Ct.1998).

■ Summary judgment is only appropriate where there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. *See* IND. T.R. 56(C); *Dana Corp. v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1244, 1246 (Ind.Tax Ct.1998). Cross motions for summary judgment do not alter this standard. *See Matonovich v. State Bd. of Tax Comm'rs,* 705 N.E.2d 1093, 1096 (Ind.Tax Ct.1999), *review denied.* The summary judgment procedure is designed to terminate cases in which there is no factual dispute and that may be determined as a matter of law. *See id.* Questions of statutory interpretation are therefore particularly amenable to resolution by summary judgment. *See id.*

### Discussion

■ Indiana imposes an excise tax (gross retail or sales tax) on certain sales made in Indiana. *See* IND.CODE ANN. § 6–2.5–2–1(a) (West 1989). This tax is not imposed on all sales taking place within Indiana, but rather on only those sales that constitute retail transactions. *See Monarch Beverage Co. v. Department of State Revenue,* 589 N.E.2d 1209, 1210 (Ind. Tax Ct.1992). The Indiana General Assembly has also enacted a number of exemptions from the gross retail tax. *See* IND.CODE ANN. §§ 6–2.5–5–1 to –38.2 (West 1989 & Supp.1999). Mynsberge contends that his purchases of electricity from NIPSCO do not constitute retail transactions and are therefore not subject to gross retail tax. In the alternative, Mynsberge contends that, even if his electricity purchases constitute retail transactions, they are exempt from gross retail tax under IND.CODE ANN. § 6–2.5–5–8 (West Supp. 1998), which exempts sales of tangible personal property acquired in the ordinary course of business for "resale, rental, or leasing." Both contentions will be dealt with in turn.

A "retail transaction" is "a transaction of a retail merchant that constitutes selling at

---

1. The electric bill has never been greater than $7800.

2. The parties do not dispute the amount of tax at issue.

3. The record does not disclose the date when Mynsberge filed his refund claim with the Department. However, because the timeliness of Mynsberge's refund claim is not raised as an issue in this case, the Court will assume that Mynsberge's refund claim was timely filed.

retail as described in IC 6–2.5–4–1, that constitutes making a wholesale sale as described in IC 6–2.5–4–2, or that is described in any other section of IC 6–2.5–4." IND.CODE ANN. § 6–2.5–1–2(a) (West 1989); *see also Cowden & Sons, Trucking, Inc. v. Department of State Revenue,* 575 N.E.2d 718, 719 (Ind.Tax Ct.1991). One such retail transaction is described in IND.CODE ANN. § 6–2.5–4–5 (West 1989) (amended 1993):

(a) As used in this section, a "power subsidiary" means a corporation which is owned or controlled by one (1) or more public utilities that furnish or sell electrical energy, natural or artificial gas, water, steam, or steam heat and which produces power exclusively for the use of those public utilities.

(b) A power subsidiary or a person engaged as a public utility is a retail merchant making a retail transaction when the subsidiary or person furnishes or sells electrical energy, natural or artificial gas, water, steam, or steam heating service to a person for commercial or domestic consumption.

(c) Notwithstanding subsection (b), a power subsidiary or a person engaged as a public utility is not a retail merchant making a retail transaction when:

(1) the power subsidiary or person provides, installs, constructs, services, or removes tangible personal property which is used in connection with the furnishing of the services or commodities listed in subsection (b);

(2) the power subsidiary or person sells the services or commodities listed in subsection (b) to a public utility described in section 6 or 7 of this chapter, or to another public utility or power subsidiary described in this section; or

(3) the power subsidiary or person sells the services listed in subsection

(b) to a person for use in manufacturing, mining, production, refining, oil extraction, mineral extraction, irrigation, agriculture, or horticulture.

However, this exclusion for sales of the services and commodities only applies if those sales are separately metered for the excepted uses listed in this subsection, or if those sales are not separately metered but are predominately used by the purchaser for the excepted uses listed in this subsection.[4]

Mynsberge contends that his purchases of electricity from NIPSCO do not fall under this statutory provision because Mynsberge does not consume the electricity, but rather resells the electricity to Coppes who then consumes the electricity in its manufacturing business.[5] According to Mynsberge, one important part of this statutory provision is the requirement in subsection 6–2.5–4–5(b) that the electricity be sold to a "person for domestic or commercial consumption" in order for the sale of electricity to constitute a retail transaction. In Mynsberge's view, the quoted language means that the person to whom the electricity is sold must be the one to consume the electricity. Therefore, according to Mynsberge, because the electricity is not consumed by Mynsberge himself, his purchases of electricity from NIPSCO fall outside of the definition of a retail transaction and, as a result, are not subject to gross retail tax. The Court disagrees.

When the Court is confronted with a question of statutory interpretation, the Court's function is to give effect to the intent of the General Assembly in enacting the statutory provision. *See Indianapolis Historic Partners v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1224, 1227 (Ind.Tax Ct.1998). In general, the best evidence of this intent is found in the language chosen by the General Assembly. *See Associated*

---

**4.** The 1993 amendment made no substantive change to section 6–2.5–4–5. It therefore has no bearing on the outcome of this case.

**5.** Mynsberge does not dispute that NIPSCO is a public utility as that term is used in section 6–2.5–4–5.

*Ins. Cos. v. Indiana Dep't of State Revenue*, 655 N.E.2d 1271, 1273 (Ind.Tax Ct.1995), *review denied*. However, the legislative intent as ascertained from an act or statutory scheme as a whole will prevail over a strict literal reading of any one particular statutory provision. *See Department of State Revenue v. Estate of Hardy*, 703 N.E.2d 705, 710 (Ind.Tax Ct.1998) (citing *State Natural Resources Comm'n v. AMAX Coal Co.*, 638 N.E.2d 418, 429 (Ind.1994); *Indiana Eby–Brown v. Department of State Revenue*, 648 N.E.2d 401, 403 (Ind.Tax Ct.1995), *review denied*). Additionally, it is presumed that the General Assembly did not intend to enact a superfluous statutory provision, *see Sangralea Boys Fund, Inc. v. State Bd. of Tax Comm'rs*, 686 N.E.2d 954, 958 (Ind. Tax Ct.1997), *review denied*, and therefore, the Court, when interpreting a statute, will endeavor to give meaning to every word in that statute. *See Guinn v. Light*, 558 N.E.2d 821, 823 (Ind.1990). Finally, section 6–2.5–4–5 is a tax imposition statutory provision. Therefore, it is to be strictly construed against the imposition of tax. *See State Bd. of Tax Comm'rs v. Jewell Grain Co.*, 556 N.E.2d 920, 921 (Ind.1990); *Tri–States Double Cola Bottling Co. v. Department of State Revenue*, 706 N.E.2d 282, 285 n. 9 (Ind.Tax Ct.1999). However, the policy of strict construction will not override the plain language of a tax imposition provision. *Cf. Hyatt Corp. v. Department of State Revenue*, 695 N.E.2d 1051, 1053 (Ind.Tax Ct.1998)(policy of strict construction should not be used to contradict plain language of a tax exemption provision), *review denied*.

Section 6–2.5–4–5 governs which sales of utility services and commodities are retail transactions and which sales of utility services and commodities are not. Subsection 6–2.5–4–5(b) sets forth a general rule that makes sales of utility services and commodities to a person for domestic and commercial consumption fall within the definition of retail transaction. Then, under subsection 6–2.5–4–5(c), some of these utility sales are excluded from that definition. As a result, the Court must first determine whether Mynsberge's purchases of electricity from NIPSCO fall under the general rule set forth in subsection 6–2.5–4–5(b). Then, the Court must determine whether subsection 6–2.5–5–4(c) excludes those purchases from that general rule.

 In analyzing subsection 6–2.5–4–5(b), the Court starts with the language chosen by the General Assembly. Subsection 6–2.5–4–5(b) deals with sales of utility services and commodities "to a person for commercial or domestic consumption." On its face, this language only requires that electricity be sold (or furnished) to a person and that it be used for either commercial or domestic consumption for that sale to constitute a retail transaction. Nothing in that language requires that the purchaser be the one who actually consumes the electricity.[6] Therefore, under the plain language of subsection 6–2.5–4–5(b), Mynsberge's purchases of electricity from NIPSCO constitute retail transactions under subsection 6–2.5–4–5(b).[7]

---

**6.** It is true that the General Assembly could have made it unmistakably clear that the purchaser and the consumer of the utility service or commodity did not have to be the same person. However, that the General Assembly could have explained itself better does not necessarily mean that the meaning of the language the General Assembly has chosen is susceptible to doubt. *See United States v. Locke*, 471 U.S. 84, 95, 105 S.Ct. 1785, 1793, 85 L.Ed.2d 64 (1985) (refusing to depart from plain meaning of clumsily drafted statute).

**7.** The Court notes that this conclusion is consistent with the case law dealing with a previous version of the law governing the gross retail tax. In *State v. Indiana–Kentucky Electric Corp.*, 438 N.E.2d 782, 784–85 (Ind.Ct. App.1982) (opinion on rehearing), the Court of Appeals construed a predecessor to section 6–2.5–4–5 to include activities other than direct sales to consumers within the meaning of retail transaction. In the past, the Court has examined previous versions of a statutory provision and the case law construing those previous versions when analyzing the meaning of that statutory provision. *See, e.g., Estate of Hardy*, 703 N.E.2d at 707–08, 710. However, the Department has chosen to base its argu-

Subsection 6–2.5–4–5(c) does not exclude Mynsberge's purchases of electricity from NIPSCO from the operation of subsection 6–2.5–4–5(b). Neither subsection 6–2.5–4–5(c)(1), which applies to the installation, construction, servicing, and removal of tangible personal property that is used in providing utility services and commodities, not the utility services and commodities themselves, nor subsection 6–2.5–4–5(c)(2), which applies to sales of utility services and commodities to other public utilities or power subsidiaries, are relevant to this case.[8] Subsection 6–2.5–4–5(c)(3) excludes utility services [9] sold to a person for use in manufacturing, mining, production, refining, etc. However, the General Assembly has expressly limited this exclusion: "[T]his exclusion for sales of the services and commodities only applies if those sales are separately metered for the excepted uses listed in this subsection, or if those sales are not separately metered but are predominately used by the purchaser for the excepted uses listed in this subsection." *Id.* As a result, the exclusion is predicated on the purchaser of the utility services and commodities consuming those services and commodities.[10] Therefore, this exclusion does not apply to Mynsberge's purchases of electricity because Mynsberge himself does not use the electricity for the listed purposes. Therefore, under the plain language of section 6–2.5–4–5, Mynsberge's purchases of electricity from NIPSCO constitute retail transactions.

The General Assembly is, of course, presumed to mean what it says, *see Hyatt Corp.,* 695 N.E.2d at 1053, and Mynsberge's arguments fail to show why the Court should not follow this presumption and take the General Assembly at its word. The Court now turns to these arguments. Mynsberge's first argument is that construing subsection 6–2.5–4–5(c)(3) to limit the exclusion to situations where the purchaser is the one who consumes the utility services or commodities would make that statutory provision wholly redundant when examined in light of IND.CODE ANN. § 6–2.5–5–5.1 (West Supp.1999). This, according to Mynsberge, would run afoul of the rule that the General Assembly is presumed not to have enacted a superfluous statutory provision.

Section 6–2.5–5–5.1 provides:

(a) As used in this section, "tangible personal property" includes electrical energy, natural or artificial gas, water, steam, and steam heat.

(b) Transactions involving tangible personal property are exempt from the

ments concerning section 6–2.5–4–5 on the language contained in the present statutory provision. Consequently, the Court will not delve further into the history of the gross retail tax law in order to resolve the meaning of section 6–2.5–4–5.

**8.** Mynsberge does not contend that he is a public utility or power subsidiary.

**9.** For some reason, the General Assembly has chosen not to repeat the "or commodities" language contained in other parts of subsection 6–2.5–4–5(c) in subsection 6–2.5–4–5(c)(3). This omission has no effect on the outcome of this case.

**10.** Careful readers of the statutory language will note that the "by the purchaser" language only appears in the part of the limitation dealing with utility sales that are not separately metered for the listed uses. Conse-

quently, it may be argued that the exclusion is not predicated on the purchaser consuming the utility services or commodities in situations where the sales are separately metered. However, to adhere to this view would require a finding that the General Assembly intended to adopt a rule that where utility sales are metered separately, the purchaser need not be the one consuming the utility services or commodities for the listed uses, but where the utility services or commodities are not separately metered, the purchaser must consume the utility services and commodities for the listed uses himself. The Court is confident that the General Assembly did not intend that subsection 6–2.5–4–5(c)(3) operate in such a bizarre manner. *See State ex rel. Hatcher v. Lake Superior Court,* 500 N.E.2d 737, 739 (Ind.1986) (statutes will not apply language used in statute in illogical manner); *Robinson v. Wroblewski,* 704 N.E.2d 467, 476 (Boehm, J., dissenting).

state gross retail tax if the person acquiring the property acquires it for direct consumption as a material to be consumed in the direct production of other tangible personal property in the person's business of manufacturing, processing, refining, repairing, mining, agriculture, horticulture, or arboriculture. This exemption includes transactions involving acquisitions of tangible personal property used in commercial printing as described in IC 6–2.1–2–4.

According to its terms, section 6–2.5–5–5.1 exempts transactions involving electricity (as well as the other listed items) from gross retail tax if the person acquiring the electricity directly uses it in the direct production of "other tangible personal property." *See Mechanics Laundry & Supply, Inc. v. Department of State Revenue,* 650 N.E.2d 1223, 1231 (Ind.Tax Ct.1995) (discussing section 6–2.5–5–5.1); *see also Rotation Prods. Corp. v. Department of State Revenue,* 690 N.E.2d 795, 798–801 (Ind.Tax Ct.1998) (discussing section 6–2.5–5–5.1 and similar exemption provisions). Mynsberge points to the fact that this language only provides an exemption where a purchaser of electricity is the one who consumes it. In Mynsberge's view, this means that limiting the exclusion found in subsection 6–2.5–4–5(c)(3) to situations where a purchaser of electricity is the one who consumes it is incorrect because it would render the exclusion found in subsection 6–2.5–4–5(c)(3) wholly redundant. According to Mynsberge, the way to solve this problem is for the Court to hold that the exclusion applies to situations where a purchaser of electricity does not actually consume that electricity.

Mynsberge's argument has a good deal of merit. Section 6–2.5–5–5.1 exempts all sales of electricity and the other listed items when they are consumed by the purchaser in the direct production of "other tangible personal property." Therefore, it is difficult to see what is added by subsection 6–2.5–4–5(c)(3), if it only ex-

cludes sales of utility services and commodities (including electricity) from the definition of retail transaction when the purchaser of those utility services and commodities is the one who consumes them. However, adopting Mynsberge's argument would create a similar problem because it would emasculate the specific language found in section 6–2.5–5–5.1 limiting the exemption to situations where the person acquiring the listed items is the one who consumes them. If the exclusion found in subsection 6–2.5–4–5(c)(3) applies to situations where the purchaser of utility services and commodities does not consume those utility services and commodities himself, then the limitation on the exemption found in section 6–2.5–5–5.1 to situations where the purchaser consumed the listed items himself would have very little practical effect. *See Dav–Con, Inc. v. State Bd. of Tax Comm'rs,* 644 N.E.2d 192, 195 (Ind.Tax Ct.1994) (courts may not construe statutes so as to emasculate them and abrogate their effectiveness); *see also Miles, Inc. v. Department of State Revenue,* 659 N.E.2d 1158, 1163–64 (Ind.Tax Ct.1995). Moreover, Mynsberge's argument would have the Court ignore the explicit "by the purchaser" limitation contained in subsection 6–2.5–4–5(c)(3).

In the Court's view, these problems with Mynsberge's position make it impossible to adhere to his interpretation of subsection 6–2.5–4–5(c)(3). Although the Court must endeavor to construe subsection 6–2.5–4–5(c)(3) so as to make it not redundant, *see Monarch Steel Co. v. State Bd. of Tax Comm'rs,* 611 N.E.2d 708, 713–14 (Ind.Tax Ct.1993), if such a course is impossible, it cannot be followed. *See Wilburn v. State,* 671 N.E.2d 143, 147 (Ind.Ct. App.1996) (courts will not treat statutory language as surplusage, unless no other course is possible), *trans. denied.* In this case, such a course is impossible, and therefore it will be the path not taken. To make subsection 6–2.5–4–5(c)(3) less redundant would require the Court to ignore specific words of limitation found in sub-

section 6–2.5–4–5(c)(3) *and* to gut a specific limitation on the tax exemption found in section 6–2.5–5–5.1. This is too high a price to pay to make subsection 6–2.5–4–5(c)(3) more significant.

Mynsberge's second argument is based on a comparison between the language of certain exemption provisions (IND.CODE ANN. §§ 6–2.5–5–3, –4 & –5.1 (West 1989 & Supp.1999)) and the language of subsection 6–2.5–4–5(c). Mynsberge notes that in these exemption provisions, the General Assembly has made it very clear that the particular exemption is limited to situations where the purchaser is the user or consumer of the exempt articles. For example, section 6–2.5–5–3 exempts manufacturing machinery, tools and equipment from gross retail tax "if the person acquiring that property acquires it for direct use in the direct production . . . of other tangible personal property." (Section 6–2.5–5–4 and the previously described section 6–2.5–5–5.1 contain similar language.) Mynsberge compares this language to the "to a person for use in manufacturing . . ." language found in subsection 6–2.5–4–5(c). From this comparison, he concludes that subsection 6–2.5–4–5(c) must be construed differently from the exemption provisions he cites so as to include situations where the purchaser of the utility services or commodities falls within the exclusion regardless of whether he uses it.

This argument ignores one crucial fact: as noted above, subsection 6–2.5–4–5(c)(3) speaks in terms of the utility services and commodities being "used by the purchaser." Any interpretation of subsection 6–2.5–4–5(c)(3) must take this into account, and the Court is not permitted to ignore the "used by the purchaser" language chosen by the General Assembly merely because subsection 6–2.5–4–5(c)(3) has a minor difference in drafting from the exemption provisions cited by Mynsberge. Consequently, the Court must reject this argument.

■ Now that the Court has concluded that Mynsberge's purchases of electricity from NIPSCO constitute retail transactions, those purchases will be subject to gross retail tax unless Mynsberge can demonstrate that he is entitled to an exemption. Mynsberge contends that his purchases of electricity from NIPSCO are exempt from gross retail tax under IND. CODE ANN. § 6–2.5–5–8 (West Supp.1999) because he resells the electricity to Coppes. Section 6–2.5–5–8 provides:

Transactions involving tangible personal property are exempt from the state gross retail tax if the person acquiring the property acquires it for resale, rental, or leasing in the ordinary course of his business without changing the form of the property. However, the rental or leasing of accommodations to a promoter by a political subdivision (including a capital improvement board) or the state fair commission is not exempt from the state gross retail tax, if the rental or leasing of the property by the promoter is exempt under IC 6–2.5–4–4.

Section 6–2.5–5–8, like all tax exemption provisions, is to be strictly construed against the taxpayer. *See Tri–States Double Cola Bottling Co.,* 706 N.E.2d at 285 n. 9.

■ Section 6–2.5–5–8 governs transactions involving tangible personal property. As a result, if section 6–2.5–5–8 is to govern Mynsberge's purchases of electricity from NIPSCO, the electricity must constitute tangible personal property as that term is used in section 6–2.5–5–8. The Court concludes that it does not and therefore holds that Mynsberge's purchases of electricity from NIPSCO are not exempt from gross retail tax under section 6–2.5–5–8.

The distinction between tangible personal property and services is very important in the gross retail tax context. "Selling at retail requires a transfer of tangible personal property, IC 6–2.5–4–1(b)(2), and the sale of services falls outside the scope of taxation because no transfer of tangible personal property occurs. Consequently,

rendering services is not subject to sales tax except as otherwise provided [by] statute." *Cowden & Sons Trucking, Inc.,* 575 N.E.2d at 719. Thus (putting aside wholesale sales as defined in section 6–2.5–4–2), retail transactions may be divided into two major categories: sales of tangible personal property and sales of services brought within the definition of retail transaction by the other provisions of chapter 6–2.5–4 of the Indiana Code.

As noted above, sales of electricity (and the other utility services and commodities) by public utilities and power subsidiaries are governed by section 6–2.5–4–5. This gives rise to the inference that electricity is not included within the meaning of tangible personal property because, if electricity were included within that meaning, there would have been no reason for the General Assembly to adopt those portions of section 6–2.5–4–5 making sales of electricity retail transactions because section 6–2.5–4–1 would already have done so. *See Sangralea Boys Fund, Inc.,* 686 N.E.2d at 958 (refusing to construe one statutory provision in a manner that would render another statutory provision superfluous). The Court's analysis is also informed by a reading of section 6–2.5–5–5.1, which deems electricity (as well as other items) to be tangible personal property for purposes of that section. Once again, if electricity constituted tangible personal property, then there would be no reason for section 6–2.5–5–5.1 to include language to that effect.[11]

The case law also buttresses the Court's conclusion. Although Indiana courts have never determined whether electricity constitutes tangible personal property in the gross retail tax context,[12] Indiana courts have addressed a similar issue. In *Department of State Revenue v. Cable Brazil, Inc.,* 177 Ind.App. 450, 380 N.E.2d 555, 561 (1978), the Court of Appeals determined that cable television signals did not fall within the meaning of tangible personal property under a previous version of the law governing the gross retail tax. In arriving at its decision, the Court of Appeals relied on the fact that if cable television signals had constituted tangible personal property, the General Assembly would not have had to enact a specific provision dealing with cable television and that other references in the tax law referred to cable television as a service. *See id.* at 559–560. In *UACC Midwest, Inc. v. Department of State Revenue,* 667 N.E.2d 232, 237 (Ind.Tax Ct.1996), this Court determined that cable television programming constituted a service rather than tangible personal property under the gross income tax law because it did not have a physical form and was not capable of being touched. Although there are differences between cable television and electricity, absent any statutory language to the contrary, there is no principled basis for finding that electricity constitutes tangible personal property when cable television does not. Accordingly, the decisions in *Cable Brazil* and *UACC Midwest* support the Court's conclusion.[13]

11. There is some language in section 6–2.5–4–5 that arguably supports the opposite conclusion. Throughout section 6–2.5–4–5, electrical energy and the other listed items are referred to as "services or commodities." To the extent that electricity is a commodity (and not a service) and to the extent that a commodity must necessarily constitute tangible personal property, the language in section 6–2.5–4–5 gives some support to the conclusion that electricity does constitute tangible personal property. However, in the Court's view, this is too slender a reed upon which to base a holding that electricity constitutes tangible personal property under section 6–

2.5–5–8 given the reasons stated for the conclusion that it does not.

12. The Court of Appeals raised the issue in *State v. Indiana–Kentucky Electric Corp.,* 438 N.E.2d at 785, and in its original decision in that case, *State v. Indiana–Kentucky Electric Corp.,* 436 N.E.2d 352, 356 (Ind.Ct.App.1982), but did not decide it.

13. Although decisions applying the tax laws support the Court's conclusion that electricity does not constitute tangible personal property, there is some tension between this conclusion and cases decided under the UCC. This is

Before concluding, the Court notes that had Coppes merely purchased the electricity from NIPSCO directly, the electricity would have either been exempt under section 6–2.5–5–5.1 or excluded from the definition of a retail transaction under subsection 6–2.5–4–5(c)(3). This fact, however, has no bearing on the outcome of this case. Although one might argue that Mynsberge's purchases should be exempt from gross retail tax because, in general, section 6–2.5–5–8 exempts otherwise taxable items that are acquired for resale. However, such an argument misidentifies the issue before the Court. The issue in this case is not whether Mynsberge's purchases of electricity from NIPSCO should be exempt from gross retail tax, but rather whether the General Assembly, through its statutory enactments, has in fact exempted them from gross retail tax, and it is not for the Court to rewrite section 6–2.5–5–8 to accommodate those who believe that their particular transaction should have fallen within its purview. *See Hyatt Corp.*, 695 N.E.2d at 1056 (refusing to add words to an exemption provision to suit Department's view of what the proper scope of the exemption should be).

## CONCLUSION

The undisputed evidence designated to this Court demonstrates that Mynsberge's purchases of electricity from NIPSCO during the tax years at issue constituted retail transactions and that those purchases did not fall within the exemption provided in section 6–2.5–5–8. As a result, Mynsberge's purchases of electricity from NIPSCO were subject to gross retail tax.

Consequently, the Court now ENTERS summary judgment for the Department.

worthy of mention because the Court often looks to the UCC for guidance in interpreting the tax laws. *See, e.g., Kimco Leasing, Inc. v. State Bd. of Tax Comm'rs*, 656 N.E.2d 1208, 1213–14 (Ind.Tax Ct.1995), *review denied.* Under the UCC, electricity qualifies as a good. *See* IND.CODE ANN. § 26–1–2–105 (West Supp. 1999); *Indiana–Kentucky Elec. Corp. v. Department of State Revenue*, 598 N.E.2d 647, 659 n.6 (Ind.Tax Ct.1992) (citing *Helvey v. Wabash County REMC*, 151 Ind.App. 176, 278 N.E.2d 608, 610 (1972)). Consequently, to the extent that one may think goods necessar-

ily constitute tangible personal property, this Court's decision is inconsistent with the case law decided under the UCC. This is not problematic. The General Assembly is certainly able to treat electricity differently under the tax law than it does under the UCC, and the Court cannot override this choice by elevating consistency over the plain language of a tax statute. Undoubtedly, the UCC is an important body of law; however, in the area of taxation, it gives helpful guidance, not ironclad orders.