SALIN BANCSHARES,
INC., Petitioner,

v.

INDIANA DEPARTMENT OF
REVENUE, Respondent.

No. 02T10–9807–TA–76.

Tax Court of Indiana.

Oct. 30, 2000.

ties must accept the risk of how a later amendment or modification will be construed by the courts.

Heidi Bieberich Adair, Beers Mallers Backs & Salin, Indianapolis, IN, for petitioner.

Karen M. Freeman–Wilson, Attorney General of Indiana and David A. Arthur, Deputy Attorney General, Indianapolis, IN, for respondent.

FISHER, J.

Petitioner Salin Bancshares, Inc. (Salin) appeals the Indiana Department of State Revenue's (Department) final determination denying Salin's requested refund of Financial Institutions Tax (FIT), *see* IND. CODE ANN. § 6–5.5–1–1 to –9–5 (West 2000), for the 1991 tax year. In this original tax appeal, Salin alleges that the Department's assessment of the FIT was

untimely. The Court restates Salin's challenge as follows:

I. Whether Salin was obligated to notify the Department of its 1995 closing agreement with the Internal Revenue Service (IRS) pursuant to IND.CODE ANN. § 6-5.5-6-6 (West 2000), where the closing agreement altered or modified Salin's tax liability for 1991; and

II. Whether the Department's assessment of Salin for deficient FIT payments more than three years after the due date for the tax was untimely, in violation of IND.CODE ANN. § 6-8.1-5-2 (West 2000).

## FACTS AND PROCEDURAL HISTORY

The material facts are undisputed. Salin is an Indiana corporation subject to the FIT. In June of 1995, Salin entered into a closing agreement with the IRS, as permitted by I.R.C. § 7121 (2000).[1] The closing agreement settled a dispute between Salin and the IRS regarding the amount of amortization deductions attributable to a core deposit intangible asset, as claimed by Salin on its federal income tax returns for 1984 and subsequent tax years. In part, the closing agreement stated that, "for federal income tax purposes" Salin was entitled to no amortization deduction for the 1991 tax year. (Closing agreement at 2-3.) The closing agreement changed Salin's federal income tax liability.[2] Salin did not notify the Department that it had entered into the closing agreement.

The Department completed an audit of Salin on August 12, 1996, finding an $8000 deficiency of FIT payments for the 1991

tax year. With penalties and interest, the total payment due for 1991 was $11,264.46. The Department's audit also found that Salin owed a total for tax, penalty and interest of $32,951.09 for the 1992 tax year and $5133.29 for the 1994 tax year. For the 1993 tax year, the Department determined that Salin had overpaid its FIT liability in the total amount, with interest, of $34,340.01. The Department issued a proposed assessment for the 1991 deficiency on September 19, 1996. Prior to October 1, 1996, the Department paid Salin's 1991 deficiency with Salin's 1993 overpayment.

By letter dated April 22, 1997, Salin requested a refund of its payment of the 1991 deficiency.[3] Salin maintained that it was entitled to a refund, because the statute of limitations for issuing a proposed assessment for the 1991 tax year had expired. On June 4, 1997, the Department responded with a letter indicating that the time period for assessing additional tax was "open if the taxpayer does not comply" with the notification requirements of Ind.Code § 6-5.5-6-6. (Original Tax Appeal Compl., Ex. C.) The Department conducted a hearing on this matter on September 8, 1997. On April 13, 1998, the Department issued a letter of finding denying Salin's request for a refund.

Salin filed this original tax appeal on July 7, 1998.[4] On November 6, 1998, Salin filed a motion for summary judgment, together with a supporting brief and its des-

---

1. Under IRC § 7121(a), the IRS is "authorized to enter into an agreement in writing with any person relating to the liability of such person ... in respect of any internal revenue tax for any taxable period." IRC 7121(b) adds that, if approved, the closing agreement "shall be final and conclusive," unless fraud, malfeasance, or misrepresentation of fact is shown.

2. Here, the agreement between Salin and the IRS eliminated an amortization deduction that Salin had claimed for the 1991 tax year. Without this deduction, Salin's tax liability for 1991 was increased.

3. It appears that Salin has also paid the deficiencies for the 1992 and 1994 tax years. However, refund of these payments is not at issue in this original tax appeal.

4. Salin named the Indiana Attorney General as a co-defendant in its complaint. On August 10, 1998, the Indiana Attorney General filed a motion to dismiss as against the Indiana Attorney General. Salin did not object to this motion. Accordingly, the Court granted the motion on September 14, 1998.

ignation of evidence.[5] The Department on December 29, 1998 filed its response opposing the summary judgment motion and asking the Court instead to enter summary judgment in its favor.[6] Salin filed a reply brief on January 6, 1999. The Court heard oral arguments from the parties on February 12, 1999 and thereafter took the matter under advisement. Additional facts will be supplied as needed.

## ANALYSIS AND OPINION

### Standard of Review

The Court reviews final determinations of the Department de novo and is bound by neither the evidence nor the issues presented at the administrative level. IND. CODE ANN. § 6–8.1–9–1(d) (West 2000); *Mynsberge v. Department of State Revenue*, 716 N.E.2d 629, 631 (Ind.Tax Ct.1999). Summary judgment is only appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. IND.TRIAL RULE 56(C); *Uniden Am. Corp. v. Indiana Dep't of State Revenue*, 718 N.E.2d 821, 824 (Ind.Tax Ct.1999). Cross motions for summary judgment do not alter this standard. *White River Envtl. Partnership v. Department of State Reve-*

*nue*, 694 N.E.2d 1248, 1250 (Ind.Tax Ct.1998).

### Discussion

■ The FIT is an "excise tax on the exercise of the corporate privilege of operating as a financial institution in Indiana." *Indiana Dep't of State Revenue v. Fort Wayne Nat'l Corp.*, 649 N.E.2d 109, 112 (Ind.1995), *cert. denied*, 516 U.S. 913, 116 S.Ct. 298, 133 L.Ed.2d 204 (1995). Specifically, section 6–5.5–2–1(a) provides "There is imposed on each taxpayer a franchise tax measured by the taxpayer's adjusted gross income or apportioned income for the privilege of exercising its franchise or the corporate privilege of transacting the business of a financial institution in Indiana."[7] Calculation of a taxpayer's FIT liability therefore relies in part upon the taxpayer's adjusted gross income; for purposes of the FIT, adjusted gross income "means taxable income as defined in Section 63 of the Internal Revenue Code," with certain adjustments. IND.CODE ANN. § 6–5.5–1–2(a) (West 2000).

### I. Notice

■ A taxpayer's FIT liability is dependent upon the taxpayer's federal adjusted gross income tax liability. When the latter changes, then the former likely changes too. This potential for change explains the

---

**5.** Salin's designated evidence consisted of (1) the complaint, (2) the Department's answer, and (3) the Department's letter of finding. On February 17, 1999, following the Court's summary judgment hearing, Salin filed a motion to submit the closing agreement as an additional exhibit. The Court granted the motion and admitted the exhibit on March 5, 1999.

**6.** The Court treats the Department's request as a cross-motion for summary judgment. IND.TRIAL RULE 56(B); *Hunt Corp. v. Department of State Revenue*, 709 N.E.2d 766, 767 n. 5 (Ind.Tax Ct.1999).

**7.** Section 6–5.5–2–1 was amended by P.L. 6–2000, § 1, with the amended version being effective retroactive to January 1, 1999. Subsection (a) of the amended version states that the FIT is "measured by the taxpayer's apportioned income for the privilege of exercising

its franchise...." Thus, this section no longer refers to "adjusted gross income." However, a taxpayer's adjusted gross income still plays a role in FIT calculation. *See* IND.CODE ANN. § 6–5.5–2–3 (West Supp.2000) (stating that the apportioned income for a taxpayer that is not filing a combined return consists of the taxpayer's adjusted gross income for the year multiplied by a certain quotient); IND. CODE ANN. § 6–5.5–2–4 (West Supp.2000) (stating that the apportioned income for a taxpayer filing a combined return for its unitary group consists of the group members' aggregate adjusted gross income multiplied by a certain quotient). The 2000 amendments essentially have eliminated the references to resident and nonresident taxpayers in sections 6–5.5–2–3 and –4, in addition to repealing IND.CODE ANN. § 6–5.5–2–2 (West Supp. 2000) (defining adjusted gross income for resident taxpayer not filing a combined return). *See* P.L. 6–2000, §§ 2, 3 & 5.

General Assembly's intent in enacting IND. CODE ANN. § 6–5.5–6–6 (West Supp.2000), which provides:

(a) Each taxpayer shall notify the department in writing of any alteration or modification of a federal income tax return filed with the United States Internal Revenue Service for a taxable year that begins after December 31, 1988, including any modification or alteration in the amount of tax, regardless of whether the modification or assessment results from an assessment.

(b) The taxpayer shall file the notice in the form required by the department within one hundred twenty (120) days after the alteration or modification is made by the taxpayer or finally determined, whichever occurs first.

(c) The taxpayer shall pay an additional tax or penalty due under this article upon notice or demand from the department.

Salin asserts that it was never obligated to notify the Department of the terms of the closing agreement. Specifically, Salin contends that it was "not aware that it altered or modified its federal income tax returns for the years 1991 through 1993." (Pet'r Br. at 4.) According to Salin, a federal tax audit for the 1991 tax year took place and the closing agreement resulted from this audit; however, "no amended tax return for the year 1991 was filed." *Id.* Thus, Salin maintains that section 6–5.5–6–6 refers to alterations or modifications of the actual tax return form and does not include a change to a taxpayer's tax liability for a given tax year, where the change stems from a closing agreement and does not involve amending a tax return. Salin reasons that "No authority exists to indicate that a closing agreement with the IRS is tantamount to altering or modifying a federal income tax return. Therefore, Salin was under no obligation to notify the [Department] of anything having to do with the IRS." *Id.*

The Department challenges Salin's position. In its brief, the Department asserts:

It does not matter that the federal changes were made as the result of a closing letter rather than on an actual federal return form. The Indiana statute is broad in its reach. It requires notification whenever there is a change **to** or **of** a federal return and not merely when a change is recorded **on** a federal return.... Thus, the argument that there is no duty to report just because the change was memorialized in a closing letter fails on the face of the statutes.

(Resp't Br. at 3–4.)

The Court may only construe and interpret a statute if it is unclear and ambiguous. *Shoup Buses, Inc. v. Indiana Dep't of State Revenue,* 635 N.E.2d 1165, 1167 (Ind.Tax Ct.1994). In construing a statute, the Court's function is to give effect to the legislature's intent in enacting the statutory provision in dispute. *Mynsberge,* 716 N.E.2d at 632. Generally, the best evidence of this intent is found in the language chosen by the legislature. *See id.* Words in a statute are given their plain, ordinary and usual meaning unless the legislative intent reveals a contrary purpose. *Maurer v. Indiana Dep't of State Revenue,* 607 N.E.2d 985, 987 (Ind. Tax Ct.1993). However, the Court may also consider legislative intent as ascertained from an act or statutory scheme as a whole. *Mynsberge,* 716 N.E.2d at 633.

Arguably, section 6–5.5–6–6 is ambiguous. Both Salin's and the Department's interpretations at first blush seem plausible. Therefore, the Court endeavors to determine the legislature's intent in enacting the provision. To begin, the Court notes that the altered or modified "return" that is the subject of the statute refers to an actual federal tax return form and not the tax liability calculated using the return. A "tax return" is an "income-tax form on which a person or entity reports income, deductions, and exemptions, and on which tax liability is calculated." BLACK'S LAW DICTIONARY 1475 (7th ed.

1999). The question is whether the alteration or modification of the return must be made exclusively on the return itself or on an amended return, as opposed to a closing agreement entered into with the federal government.

Salin's interpretation of section 6–5.5–6–6 is overly restrictive and is inconsistent with legislative intent. Admittedly, section 6–5.5–6–6 is not a model of precision and the Department has promulgated no regulations clarifying its terms.[8] However, the General Assembly clearly intended to place a duty upon taxpayers to notify the Department of "any alteration or modification" to their federal income tax returns. As noted by the Department, the language chosen by the legislature is broad in scope. It does not limit the alterations or modifications to only those actually applied to a taxpayer's income tax return or to those marked on an amended return. The alterations or modifications that must be reported include "any" change "in the amount of tax," regardless of the source of the change. IND.CODE § 6–5.5–6–6. The source of the change, as in the present case, can be an agreement with the IRS to modify one's tax liability without actually modifying one's return. The closing agreement increased Salin's federal income tax liability for 1991, which effectively altered or modified its federal income tax return for that year.

An examination of the FIT statutes further supports the Court's conclusion. As explained *supra*, a taxpayer's FIT liability is dependant upon its federal adjusted gross income tax liability. Moreover, taxpayers are required to file annual FIT returns, *see* IND.CODE ANN. § 6–5.5–6–1 (West 2000), and to pay their FIT liabilities at the time fixed for filing these returns, "without assessment or notice and demand from the department," *see* IND. CODE ANN. § 6–5.5–6–4 (West 2000). Thus, the Department relies upon taxpayers to timely report their FIT liabilities and to accurately base their calculations upon their federal adjusted gross income tax liabilities. Considered in conjunction with the broad language used in section 6–5.5–6–6, the Court concludes that the legislature intended for taxpayers to notify the Department of changes to their federal income tax liabilities, regardless of whether alterations or modifications are made on a tax return itself or in a manner that effectively alters or modifies the tax return. In conclusion, Salin was obligated to and failed to notify the Department of its 1995 closing agreement with the IRS.

## II. Statute of Limitations

Salin argues that, even if notice of its closing agreement was required and it failed to file the notice called for by section 6–5.5–6–6, the Department's assessment of additional FIT was improper because the statute of limitations for making additional

---

**8.** The General Assembly and/or the Department could be more specific regarding when notice or an amended return is required and what triggers the obligation to file the notice or amended return. For example, MONT.ADMIN.R. 10–2.105 provides:

(1) **In general.** If the taxpayer's federal taxable income or federal tax reported on his/her federal income tax return is changed, the taxpayer shall file an amended return with the Department of Revenue reflecting the final determination.

(2) **Time of notice.** The taxpayer must report the change(s) within ninety (90) days after the final determination of the changes(s) and pay any tax due. . . .

(3) **Final determination.** For the purpose of this rule, the following shall be deemed a final determination:

\* \* \* \*

(D) A closing agreement entered into with the IRS under section 7121 of the Internal Revenue Code (IRC). The final determination shall occur when the taxpayer receives notice of the signing by the commissioner of internal revenue.

This provision explains that a taxpayer shall file an amended return (and not just a notice) when its federal taxable income or federal tax reported is changed. More importantly, the provision identifies a closing agreement as a means by which a taxpayer's federal tax liability can be changed; in contrast, subsection 6–5.5–6–6(b) merely states that notice shall be sent within one hundred twenty days after the alteration or modification is made by the taxpayer or is "finally determined."

assessments had run. INDIANA CODE ANN. § 6–8.1–5–2(a)(1) (West 2000) states that the Department "may not issue a proposed assessment under [IND.CODE § 6–8.1–5–1] more than three (3) years after the latest of the date the return is filed, or . . . the due date of the return." Salin maintains that the 1991 FIT return was due October 15, 1992 and therefore the three-year statute of limitations expired on October 15, 1995—roughly eleven months prior to the Department's proposed FIT assessment. Accordingly, Salin asserts that the proposed assessment was untimely.

■ The Department claims that Salin was required to file an amended FIT return to serve as its notice under section 6–5.5–6–6. Because no such notice was filed, the Department contends that its time to issue a proposed assessment was indefinitely extended under IND.CODE § 6–8.1–5–2(e). Section 6–8.1–5–2(e) provides that "If a person . . . does not file a return, there is no time limit within which the department must issue its proposed assessment." [9]

The Department would be correct, if section 6–5.5–6–6 required Salin to file an amended FIT return. Unfortunately for the Department, it does not so require. Subsection (b) states that the required notice shall be filed "in the form required by the department." The Department admits that it has designated no specific form. (Resp't Br. at 5.) However, the Department's final determination states that the "form of notice required by the Department is an amended return." (Final determination at 2.) This position is reiterated in the Department's brief, where it asserts "The Department requires that the alteration or modification be reported on a[n] amended return form." (Resp't Br. at 4.) No authority is cited to support the Department's statements that the proper form of notice is an amended return. Instead, the Department claims in conclusory

fashion "This simply makes sense" and goes on to make the following argument:

> The accepted and readily discernible means of reporting a change in tax liability and in paying that liability is to file an amended return. A 'return' is not limited to the first form that a taxpayer files and different forms can substitute for each other when the facts show that is the intent and there is no specific statute or rule limiting the form that can be used. . . . A change in tax liability can be reported on an amended return. . . . The written notice is a return, no matter what form (or even in letter form) it is given. . . . [B]ecause the statute and rules do not prescribe the form of the notification then regardless of the form that is used it is a 'return' within the meaning of the assessment period statute.

(Resp't Br. at 4–5.)

To support its position that the notice required by section 6–5.5–6–6 is an amended return, the Department cites this Court's opinion in *UACC Midwest, Inc. v. Indiana Department of State Revenue,* 629 N.E.2d 1295 (Ind.Tax Ct.1994). In *UACC Midwest,* the Department claimed that the Court lacked subject matter jurisdiction to hear the taxpayer's claim, because the taxpayer failed to request refunds under IND.CODE § 6–8.1–9–1 using the form prescribed by the Department. The Department had in fact prescribed Form 615 for refund requests but had not made use of the form mandatory. The Court observed that neither section 6–8.1–9–1 nor the Department's regulations required that a specific form be filed to claim a refund. *UACC Midwest,* 629 N.E.2d at 1298. As noted by the Court, the only information required to claim a refund was the reason for and the amount of the requested refund. *Id.* (citations omitted). The taxpayer in *UACC Midwest* had filed amended returns on Form IT–20X, along with explanatory statements attached

---

9. Formally designated as subsection (d), effective January 1, 2000, this provision was redesignated as subsection (e). *See* P.L. 181–1999.

thereto, within three years of the due dates of the gross income tax returns at issue. The Court concluded that these amended returns, together with the explanatory statements, supplied the Department with the information required by both statute and regulations. *Id.* at 1299. Therefore, the taxpayer had properly requested refunds. *Id.*

The flaw in the Department's argument is that it contradicts the plain language of section 6–5.5–6–6 and is inconsistent with other FIT statutes. First, section 6–5.5–6–6(c) states that a taxpayer shall pay additional FIT tax or penalty "upon notice or demand from the department." Thus, unlike the basic scheme of the FIT statutes, which requires taxpayers to automatically file returns and pay taxes without assessment or notice and demand from the department, taxpayers who have had their federal returns altered or modified must pay additional FIT taxes or penalties only if the Department issues them notices or makes demands instructing the taxpayers to do so. Filing an amended tax return involves the recalculation by a taxpayer of its FIT liability, an action not required by section 6–5.5–6–6. Second, the language of the FIT statutes shows that the General Assembly knows how to distinguish between requiring a return to be filed and requiring a notice to be filed. Sections 6–5.5–6–1, –2, –4, –5 and –7, among others, use the term "return." This suggests that, if the General Assembly had intended for the term notice under section 6–5.5–6–6 to be the equivalent of the term return under the other FIT provisions, it would have expressly said so.

Moreover, *UACC Midwest* does not help the Department's claim. *UACC Midwest* considered whether a form other than that prescribed by the Department, i.e., an amended return, could be used to claim a refund. In other words, *UACC Midwest* involved the proper form for claiming a refund and not, as in the present case, the proper form for informing the Department of the taxpayer's changed federal tax lia-

bility. Applying *UACC Midwest*, one could surmise that, if it had it chosen to do so, Salin could have used an amended tax return to notify the Department of its 1995 closing agreement. The case does not, despite the Department's statements to the contrary, stand for the proposition that the notice required by section 6–5.5–6–6 is an amended tax return.

In short, absent any statute or regulation saying otherwise, the Court refuses to interpret the notice called for by section 6–5.5–6–6 as requiring a taxpayer to file an amended return. Such an interpretation would be illogical, and the Court endeavors to construe statutes so as to prevent absurd results. *Uniden Am.*, 718 N.E.2d at 828. The Court finds that Salin could have chosen to but was not required to file an amended tax return in order to satisfy the notice requirement of section 6–5.5–6–6. Therefore, the Department's limitations period for assessing Salin additional FIT was not indefinitely extended under section 6–8.1–5–2(d).

However, Salin does not escape liability. Although not argued by the Department, the Court finds that Salin is equitably estopped from asserting its statute of limitations defense. "Equitable estoppel is available if one party, through its representations or course of conduct, knowingly misleads or induces another party to believe and act upon his conduct in good faith and without knowledge of the facts." *Wabash Grain, Inc. v. Smith*, 700 N.E.2d 234, 237 (Ind.Ct.App.1998), *trans. denied.* The elements of equitable estoppel are: (1) a representation or concealment of a material fact; (2) made by a person with knowledge of the fact and with the intention that the other party act upon it; (3) to a party ignorant of the fact; (4) which induces the other party to rely or act upon it to his detriment. *Id. Accord Glass Wholesalers, Inc. v. State of Ind. Bd. of Tax Commr's*, 568 N.E.2d 1116, 1122 (Ind.Tax Ct.1991). The reliance element consists of two prongs: (1) reliance in fact and (2) right of reliance. *Wabash Grain,*

700 N.E.2d at 237. Fraud, either actual or constructive, on the part of the person estopped, is essentially the basis for the doctrine of equitable estoppel. *Farrington v. Allsop*, 670 N.E.2d 106, 109 (Ind.Ct.App. 1996) (quoting *Lawshe v. Glen Park Lumber Co.*, 176 Ind.App. 344, 347, 375 N.E.2d 275, 278 (1978)). Constructive fraud is "fraud that arises by operation of law from conduct which, if sanctioned by the law, would secure an unconscionable advantage." *Id.* Thus, application of the equitable estoppel doctrine is not limited to circumstances involving an actual false representation or concealment of existing material fact, where the fraud demonstrated is of "such character as to prevent inquiry, or to elude investigation, or to mislead the party who claims the cause of action." *Paramo v. Edwards*, 563 N.E.2d 595, 599 (Ind.1990) (quoting *Guy v. Schuldt*, 236 Ind. 101, 107, 138 N.E.2d 891, 894 (1956)). Equitable estoppel may preclude a party from invoking the statute of limitations defense. *Farrington*, 670 N.E.2d at 109.

The elements of equitable estoppel are established in this case. Here, Salin failed in its statutory duty to notify the Department of its 1995 closing agreement, which led to a change of its 1991 federal income tax liability. Salin's failure left the Department ignorant of the closing agreement's terms. Thus, the Department was prevented from recalculating Salin's FIT liability for the 1991 tax year in a timely manner. As with all taxpayers, the Department relied upon Salin to be forthright in notifying it of changes to its federal tax liabilities. Given the self-reporting scheme used by the FIT statutes, the Department had every right to presume that Salin would notify it of changes in Salin's federal tax liability. The Court will not allow Salin to disclaim its obligation to notify the Department of the closing agreement's terms. Salin's conduct amounted to constructive fraud on its part. Salin cannot rely upon its own failure to notify as the basis for claiming that the Department's period for assessing additional FIT and penalties has run; to allow Salin to successfully invoke a statute of limitations defense would secure for it an unconscionable advantage via its own misconduct. *Cf. Glass Wholesalers*, 568 N.E.2d at 1123 ("[Taxpayer] could not base its claim of estoppel on its own failure to amend its 1987 federal income tax return .... [or] upon its own failure to keep adequate books.").

The closing agreement was effective as of June 30, 1995. Salin had one hundred twenty days from that point to notify the Department of the closing agreement's terms. It submitted no notice to the Department. The Department had a reasonable time from the time it received notice of Salin's changed federal tax return in which to assess the taxpayer additional FIT tax and penalties. The Department completed its audit of Salin on August 2, 1996; thus, at that moment it either knew or should have known of Salin's deficient FIT payment for the 1991 tax year. The Department issued a proposed assessment to Salin of additional FIT, penalties and interest the following month, on September 19, 1996. This was a reasonable period. Therefore, under these circumstances, the Department's assessment was timely issued.

## CONCLUSION

For the aforementioned reasons, the Court hereby DENIES Salin's motion for summary judgment and GRANTS the Department's cross-motion for summary judgment. The Department's final determination is AFFIRMED.